Irwin **ABRAHAM, et al, Plaintiffs,**

v.

**VOLKSWAGEN OF AMERICA, INC., Defendant.**

**No. CIV–83–196T.**

United States District Court,
W.D. New York.

Sept. 10, 1984.

Shoolman & Shoolman, Rochester, N.Y., (Carl Shoolman, Rochester, N.Y., of counsel), for plaintiffs.

Harter, Secrest & Emery, Rochester, N.Y. (Anthony R. Palermo, Rochester, N.Y., of counsel), for defendant.

Good, Lopat, Beyer & Hamilton, Buffalo, N.Y., for third-party defendant, John F. Schoenhardt, etc.

Herzfeld & Rubin, P.C., New York City, Additional Counsel to Volkswagen of America, Inc.

## INTRODUCTION

TELESCA, District Judge.

In this action, plaintiffs allege two claims under the Magnuson-Moss Act, 15 U.S.C. Section 2301 et. seq. and several pendent state law claims involving alleged defects in Volkswagen Rabbits manufactured by defendant between 1975 and 1979. The alleged defects center upon problems with the vehicles' lubrication systems which allegedly caused excessive oil consumption and a variety of other difficulties. Because of the specific jurisdictional requirements of the Magnuson-Moss Act, defendant was permitted to conduct limited discovery for the purpose of challenging plaintiffs' factual allegations in the complaint concerning subject matter jurisdiction. Subsequent to this limited discovery, defendant now makes several motions: (1) to dismiss the class action claims for failure to meet the jurisdictional requirements of the Magnuson-Moss Act; (2) to sever the individual claims for misjoinder under F.R.Civ.P. 20, and thereafter to dismiss the complaint for failure to meet the jurisdictional requirements of the Magnuson-Moss Act and, (3) in the alternative, to stay or dismiss the action pending a disposition of a prior New York State action commenced by four of the named plaintiffs purportedly on behalf of a class of all persons similarly situated.

## DISCUSSION

### I.

The first issue which must be addressed is the scope of inquiry permitted on these motions. Plaintiffs argue vigorously that they have adequately pleaded colorable claims under the Magnuson-Moss Act. They argue, that since subject matter jurisdiction has been validly pleaded, no further inquiry into the merits of their claims is permissible at this stage of the proceedings.

In support of this position, plaintiffs rely upon *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) which held, they claim, that it is improper for a federal district court to look into the merits of the claims alleged in the complaint on a motion to dismiss for lack of subject matter jurisdiction. Id. at 682, 66 S.Ct. at 776. Before addressing the applicability of the holding in *Bell v. Hood* in the instant case, a review of the Magnuson-Moss Act jurisdictional requirements is appropriate.

The Consumer Product Warranty Act, 15 U.S.C. Section 2301, et seq., commonly referred to as the Magnuson-Moss Act (in tribute to its sponsors), creates a right of action in favor of aggrieved purchasers of consumer products under federal law. However, the act provides that no claim is cognizable in federal court:

(A) If the amount in controversy of any individual claim is less than the sum or value of $25;

(B) If the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in the suit; or

(C) If the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. Section 2310(d)(3).

The legislative history of the act reveals that the purpose of these strict jurisdictional requirements for suits brought in federal court was two-fold: "(1) to avoid trivial or minor actions being brought as class actions in federal district court; and (2) to overcome the absence of an amount in controversy requirement in 28 U.S.C. Section 1337, since the Magnuson-Moss Warranty Act is an Act regulating commerce." *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541, 543 (N.D.N.Y.1978).

Plaintiffs argue that under *Bell v. Hood, supra,* they have sufficiently pleaded a Magnuson-Moss Act claim to defeat the present motion since there are in excess of 100 plaintiffs with individual claims in excess of $25.00 and with aggregate claims in excess of $50,000. Defendant counters that the interrogatories answered by plaintiffs clearly show that there are less than 100 plaintiffs who actually have any argua-

ble claims under the Act, and therefore, this Court should dismiss plaintiff's class action claim for lack of subject matter jurisdiction because they have failed to meet the critical requirements of 15 U.S.C. Section 2310(d)(3)(C).

In *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, unpublished decision, (D.D.C.1984), Judge Green faced the identical issue of whether *Bell v. Hood* limited her inquiry into the lack of subject matter jurisdiction issues raised by the defendant on a motion to dismiss the plaintiff's Magnuson-Moss Act claims. Judge Green held that *Bell v. Hood* was distinguishable from the case before her because *Bell v. Hood* dealt with general federal question jurisdiction under 28 U.S.C. Section 1331. Where a plaintiff relies on a jurisdictional statute which provides specific threshhold requirements, Judge Green held that there is no such limitation on a court's inquiry into the merits. *Walsh, supra,* at p. 1519; *See Mt. Health City School District Board of Ed. v. Doyle*, 429 U.S. 274, 278–79, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977). In analogizing between the Magnuson-Moss Act and other statutes requiring a specific jurisdictional threshhold such as the Alien Tort Statute, 28 U.S.C. Section 1350, and the Mandamus Act, 28 U.S.C. Section 1361, Judge Green held that it was entirely proper to determine whether 100 of the *Walsh* plaintiffs had arguable claims under Magnuson-Moss in an early stage of the litigation.

This court adopts Judge Green's thoughtful and thorough analysis as well as her conclusion. If the contrary were true, plaintiff could simply open up the local telephone directory and find 99 other individuals willing to place their names on a complaint and thereby defeat a motion to dismiss and permit the lone individual to proceed with discovery. Such a result would be contrary to the intentions of the act to limit litigation in the federal courts to only those cases of major magnitude.

## II.

Having decided that it is proper to explore the factual basis for plaintiffs' claims of jurisdiction, I turn now to an analysis of the issues raised by defendant.

Plaintiffs' complaint alleges two Magnuson-Moss Act claims, the first under a written warranty theory and the second under an implied warranty theory. Both of these claims are raised in class action form. Defendant has challenged this court's subject matter jurisdiction to hear either of these claims.

Defendant claims, *inter alia*, that based upon the interrogatories answered to date by the plaintiffs, many of the named plaintiffs do not have an express warranty claim because the problems with their vehicle occurred after the expiration of the manufacturer's warranty. Moreover, defendant alleges that because the implied warranty claims available under the Act are defined as claims pursuant to "an implied warranty under state law" 15 U.S.C. Section 2301(7), state law privity requirements are applicable as to many of the plaintiffs preventing them from being successful on these claims.

■ Before resolving how many of the named plaintiffs have stated valid, implied or express warranty claims, I must first decide whether the 100 named plaintiff requirement of Section 2310(d)(3)(C) dictates that there be 100 plaintiffs for each claim, or 100 total plaintiffs who have any claim at all. In reviewing the Act's legislative history, this court fails to find any requirement that each separate claim under the Act have 100 named plaintiffs. Thus, I must again agree with Judge Green in *Walsh v. Ford Motor Co., supra,* page 1538, that if 100 plaintiffs can state a claim (whether express or implied warranty), then the jurisdictional requirement of Section 2310(d)(3)(C) will be satisfied.

However, this court must also agree with defendant that only one plaintiff may state a claim per vehicle purchased. Therefore, thirteen of the 119 named plaintiffs who allege claims against the defendant for a vehicle which also provides the basis for the claim of another named plaintiff, can-

not be counted toward the 100 plaintiff requirement. *See Walsh v. Ford, supra; Garbo v. Ford Motor Co.*, 1983–2 Trade Cases, para. 65, 701 (D.D.C.1982).

A. Express Warranty.

■ After reviewing the answers to the interrogatories filed by the plaintiffs, the defendant has cited some 59 named plaintiffs whose claimed complaint or repair of their vehicle occurred outside of the express period covered by the defendant's warranty.[1] (See Exhibit D of the Affidavit of Daniel V. Gsovski, Esq., sworn to on May, 1984).

Plaintiffs argue that all repairs stem from the same related problems with the lubrication system and that the defects were present on the automobiles at the time of the purchase. Thus, plaintiffs contend that they possess express warranty claims regardless of whether the defects manifested themselves outside of the warranty period.

Again, this court will defer to the thoughtful and thorough analysis of Judge Green in *Walsh v. Ford Motor Co.* on this exact issue. Relying upon several state court cases, including *Taterka v. Ford Motor Co.*, 86 Wis.2d 140, 271 N.W.2d 653, 657 (Sup.Ct.1978), *Broe v. Oneonta Sales Co.*, 100 Misc.2d 1099, 420 N.Y.S.2d 436 (Sup.Ct. Otsego Co.1978), and *Moulton v. Ford Motor Co.*, 13 U.C.C.R.S., 55 (Tenn.Ct. of App.) aff'd in relevant part, 511 S.W.2d 690 (Tenn.) cert. denied, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974), the court held that the buyer of a product with an express limitation as to the time or mileage during which the warranty will be effective, bears the risk of repairs which become necessary beyond that warranty period. *Walsh, supra*, at 1536.

A written warranty is part of the bargain struck between buyer and seller. In the event that the buyer is unhappy with the period covered by the manufacturer's warranty, he has the choice of not buying the car or purchasing additional protection. To adopt plaintiff's position herein would be tantamount to elimination of the limitations bargained for in the warranty, for there are few situations where the buyer could not argue that the repairs made after the warranty period had expired were caused by a defect which was present during the warranty period.

B. Implied Warranty.

■ Defendant claims that 77 of the named plaintiffs do not possess a valid cause of action for implied warranty under the law of the state where they purchased their vehicle, because they lack privity with the defendant. Plaintiffs argue, however, that no privity is required because the Magnuson-Moss Act creates a new federal implied warranty right of action which does not require privity. In support of this position, plaintiffs rely upon the definitions of "consumer", "supplier" and "warrantor" found in 15 U.S.C. Section 2301.

Plaintiffs' argument ignores, however, another definition found in 15 U.S.C. Section 2301, which would seem to this court to be unambiguous. Section 2301(7) states: "the term 'implied warranty' means an implied warranty arising under state law ... in connection with the sale by a supplier of a consumer product".

Every federal court that has faced this issue has decided it adversely to plaintiffs' position. *See Walsh v. Ford, supra; Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 605 n. 13 (S.D.N.Y.1982); *Illinois Correction Services, Inc. v. General Motors Corp.*, Civ. No. 82–2743, sl. op. at p. 2 (N.D.Ill. decided November 22, 1982). Accordingly, this court will count toward the 100 plaintiffs requirement *only* those individuals who possess valid implied warranty claims under the law of the state of purchase. *See Brendle v. General Tire and Rubber Co.*, 505 F.2d 243, 244 (4th Cir.1974); *Fosen v. United Technologies Corps.*, 484 F.Supp. 490, 504 (S.D.N.Y. 1980), aff'd, 633 F.2d 203 (2d Cir.1980).

---

**1.** For 1975 model year vehicles, the warranty covered the vehicle for 24 months, or 24,000 miles, whichever expired first. For all other model years, the warranty was 12 months, 20,000 miles.

## C. Valid Claims in the Present Case.

A large number of the plaintiffs in the present case purchased their vehicle in either New York, Illinois, Indiana, New Jersey or Wisconsin. In all of these states, privity is required to state a valid implied warranty claim. *See Martin v. Dierck Equipment Co.*, 43 N.Y.2d 583, 403 N.Y. S.2d 185, 374 N.E.2d 97 (1978); *Melander v. Kileen*, 86 Ill.App.3d 213, 41 Ill.Dec. 639, 640, 407 N.E.2d 1137, 1138 (1980); *Lane v. Barringer*, 407 N.E.2d 1173, 1175 (Ind. App.1980); *Herbstman v. Eastman Kodak Co.*, 68 N.J. 1, 342 A.2d 181, 185 (1975); and *LaCrosse v. Schubert, Schroeder and Associates, Inc.*, 72 Wis.2d 38, 240 N.W.2d 124, 125 (1976). Although defendant argues that several other states in which a number of plaintiffs purchased their vehicles also require privity, namely California, Maryland, Mississippi, Ohio and the District of Columbia, this court need go no further in this inquiry than the five states listed above. (See discussion, *infra*.) After reviewing all of the answers to the interrogatories filed by plaintiffs and the various materials filed by all parties on this motion, this court has identified *at least thirty-one* purported plaintiffs who lack *either* an express warranty claim under the warranties issued by defendant on the vehicles in question or an implied warranty claim under the law of the state of purchase (see Appendix). As a result, only 75 of the named plaintiffs could possibly have any claim under the Magnuson-Moss Act and, there are not 100 named plaintiffs as is required under 15 U.S.C. Section 2310(d)(3)(C), to bring a class action.

## III.

What remains is to determine whether the 75 (or fewer) remaining plaintiffs have met the requirements of 15 U.S.C. Section 2310(d)(3)(A), (B). With respect to the requirements of subdivision (A), most, if not all, of the remaining 75 have alleged damages in excess of $25.00. The requirement of subdivision (B) would also seem to be met since the combined total of the claims of the remaining 75 plaintiffs exceeds the $50,000 minimum. The issue presented, however, is whether these plaintiffs can properly aggregate their claims under F.R.Civ.P. 20.

In *Saval v. B.L. Ltd.*, 710 F.2d 1027 (4th Cir.1983), the plaintiffs brought suit under the Magnuson-Moss Act alleging defects in the cooling system of their Jaguar automobiles. The trial court rejected the plaintiffs' argument that the Magnuson-Moss Act supersedes the requirements of F.R. Civ.P. 20 for permissive joinder. The court went on to hold that because the four automobiles in question had different maintenance and driving histories, and the problems alleged were not clearly attributable to the same defect, then the plaintiffs had not met the "same transaction or occurrence" test of Rule 20 and joinder was improper. On appeal, the Fourth Circuit affirmed the ruling that Rule 20 was not superseded by the Magnuson-Moss Act, and further held that the district court did not abuse its discretion in not allowing joinder of the individual claims under Rule 20. Id. at 1032.

In the amended complaint in the present case, the plaintiffs allege that the "[d]efendant's materials and workmanships cause the Rabbit engines to prematurely wear, burn oil excessively, need repairs prematurely, operate without an effective oil warning light, have a high risk of catastrophic engine failure, and often self-destruct" (paragraph 21). The plaintiffs further allege "(a) among the defects are the oil pan, valve stem seals, the valve stem guides, and the oil warning light system" (paragraph 22).

I must conclude that the remaining plaintiffs in the present case present a similar situation as found in *Saval*. Here, as there, although all the claims relate to one specific system of the car (here the oil system), the alleged defects occurred on some cars and not others. Additionally, the interrogatories indicate that for some plaintiffs repairs were needed in the first 20,000 miles of operation while for many others, repairs were not made until after 80,000 miles and several years of driving.

This disparity in the timing of problems stemming from the same group of alleged defects indicates that the driving and maintenance histories of each individual vehicle are vitally important to proving or disproving each individual claim. When this factor is considered together with the disparity and the time of purchase of the vehicles and the different model years involved, this court must conclude that plaintiffs have not satisfied the "same transaction and occurrence" test necessary to permit individual claims to be joined under F.R.Civ.P. 20. *See Desert Empire Bank v. Insurance Co. of North America,* 623 F.2d 1371 (9th Cir. 1980).

### IV.

### CONCLUSION

In summary, after a thorough review of the information found in the answers to interrogatories filed by the individual plaintiffs, this court finds that there are not 100 named plaintiffs who possess a valid claim under the Magnuson-Moss Act and therefore, no class action can be maintained. See 15 U.S.C. Section 2310(d)(3)(C). Further, the named plaintiffs who do possess valid claims, do not meet the tests for permissive joinder under F.R.Civ.P. 20, and thus, the aggregate $50,000 jurisdictional requirement of the Magnuson-Moss Act is not satisfied by any individual plaintiff proceeding on his own. 15 U.S.C. Section 2310(d)(3)(B).

Accordingly, the case is dismissed for lack of subject matter jurisdiction pursuant to F.R.Civ.P. 12(b)(1).

ALL OF THE ABOVE IS SO ORDERED.

### APPENDIX A

(1) Arthur Balmes, purchased car in Illinois 12/75, replaced engine after 43,000 miles.

(2) C. & E. Birnes, purchased car in New York on 8/18/78, replaced engine after 16,120 miles.

(3) Bryan Brames, purchased 1975 car used in New York in May, 1979, replaced engine in August of 1979.

(4) Richard and Sigrid Bruns, purchased 1978 Rabbit in New York on 11/11/77; repair made in 1981.

(5) Richard Butler, purchased 1977 Rabbit in New York on 8/2/77, repair made on 10/21/78.

(6) Edwin and Joanne Cedilotte, purchased 1977 Rabbit in New York on 5/23/77, repair made on 5/11/79.

(7) Catherine Colegrove, purchased vehicle in New York, repair made after 80,142 miles.

(8) Susan Delaney, purchased car in New York on 10/78, had repair done on 4/81 after 26,073 miles.

(9) William Doyle, purchased car in New York in 1977, repair made after 30,000 miles.

(10) Kathleen Eisenhauer, purchased 1978 vehicle on 4/79, repair 3/80 after 15,000 miles.

(11) Cynthia Estruch, purchased vehicle in New York in 8/78, repair on 1/81 after 47,326 miles.

(12) Henry Friedman, purchased vehicle in New York on 7/7/77, repair on 4/25/79.

(13) Harry Gewanter, purchased 1979 vehicle in New York on 10/31/78, repair after 26,500 miles.

(14) Mitchell Goldstein, purchased vehicle in New York 10/4/75, repair on 7/31/78.

(15) Robert Goodman, purchased vehicle in Ohio in 1975, repair 12/16/80.

(16) Patricia Gyer, purchased 1977 vehicle in New York on 12/2/81, repaired engine after 70,886 miles.

(17) Peter Harrissis, purchased 1976 vehicle in New York, repaired after 64,000 miles.

(18) Fred Hundhausen, purchased 1977 vehicle in New York on 6/8/79, repaired on 10/22/80.

(19) Mary Julian, purchased 1977 vehicle in New York on 7/15/77, repaired on 9/5/79 after 16,000 miles.

(20) Sandra Kessler, purchased 1978 vehicle on 1/78 in New York, repaired on 7/83.

(21) Richard Kirchoff, purchased 1977 vehicle in New York in 1977, repaired on 6/18/80.

(22) Randall Krause, purchased vehicle in Wisconsin in 1978, repaired in 1980.

(23) Jergen Krous, purchased 1979 vehicle in Indiana, repair 3/82 after 22,000 miles.

(24) Lou Ann Marinello, purchased 1979 vehicle in 12/79, repair after 37,000 miles.

(25) David Nesser, purchased 1979 vehicle in New York, repair after 57,000 miles.

(26) Jose Rodriguez, purchased 1978 vehicle in New York on 1/23/78, repair 04/80.

(27) Barbara and Philip Rubin, purchased 1978 vehicle on 10/12/78, repair 12/1/81 after 21,700 miles.

(28) Judith Schmucker, purchased 1978 vehicle in New York, repair 9/16/81 after 20,445 miles.

(29) Brian and Sherri Schuster, purchased 1977 vehicle in Indiana in 1980, repair in 1981 after 35,000 miles.

(30) Thomas Shevlin, purchased 1977 vehicle in New York in 1980, repair after 28,000 miles.

(31) Andrew Stewart, purchased 1978 vehicle in New York in 2/78, repair 4/13/82 after 35,000 miles.

(32) A.T. Valencia, purchased 1977 vehicle in Indiana, repair 6/79 after 20,000 miles.

(33) John and Maria Wilkins, purchased 1978 vehicle in New York on 4/3/78, repair 5/5/81 after 25,000 miles.