Irwin ABRAHAM; John Anderson; Thomas Baker; Arthur Balmes; Banwell, White & Arnold, Inc.; Christopher & Elizabeth Beirne; Joseph Blackburn; Bryan Brames; James A. Bunn; Richard & Sigrid Burns; Richard Butler; Ann B. Caulfield; Edwin F. & Joanne Cedilotte; Frederick Coholan; Harry Cole; Kathryn Colegrove; Henry & Norma Cruz; Charlene G. & Elkins Dahle; Susan Delaney; Loretta Anne Dennis; Doreen Fitzgerald Dewald; Patricia Guyer; William Doyle; Thomas Dunn; Kathleen Eisenhauer; Lothar & Carole Eiserloh; Cynthia Estruch; Margaret Fenley; Remy Fenster; Paul Fischer; Henry Friedeman; Don Furnas; Harry Gewanter; Karen A. Glasow; Mitchell Goldstein; Robert Goodman; Michael B. Gross; Franklin & Barbara Haas; Peter Harissis; Albert J. Havranek; Ellen Hawyer; Tony Henson; Terrence D. Herne; Fred Hundhausen; Dirk E. Huttenbach; William & Nancy Jones; Mary Julian; Sandra Kessler; Richard V. Kirchhoff; Joan Koven; Randall G. Krause; Juergen Kroos; Robert Kropkowski; James Dubrick; Anne Marie Kuder; Joan Lawlor; Steven Levine; Paul Levinstein; G. Seth Leyman; Alvin S. Levy; William J. Little; C. Douglas McArthur; Raj Mangla; Lou Ann Marinello; J. Douglas Martin; Elaine Mason; Patrick Mathews; Curt Matthews; Katherine & Donald McConnell; Joseph W. Mechaber; Edward Michaels; Marcia Milton; Sterling Moffat; Peter Monaldi; Robert J. Nemes; David Nesser; Pamela Hall O'Connor; Stuart H. Orkin; Orval Rader; C. Michael & Karen Reimringer; Ann Roberts; Michael Roberts; Jose Rodriguez; Henry Rohrer, Jr.; Barbara & Philip Rubin; Mari E. Ryan; Susan Schliff; Dennis Schmidt; Judith Schmucker; Brian & Cheri Schuster; Thomas R. Shevlin; Alexander Simpson; Rita Simpson; Mary Soles; Andrew Stewart; Edward Taylor; Archie Lowell Thing; Ernestine S. Thomann; William Trautman; A.T. Valencia; Annunziata Vetter; Jill Voran; John &

Maria Wilkins; Suzanne Willis; Lois Winslow; Ralph Zimelman; Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant-Appellee.

VOLKSWAGEN OF AMERICA, INC., Third-Party Plaintiff,

v.

John F. SCHOENDHARDT d/b/a Kincannon Mobil Gas Service, et al., Third-Party Defendants.

No. 367, Docket 85–7552.

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1985.

Decided June 26, 1986.

Beverly C. Moore, Jr., Washington, D.C. (Carl Shoolman, Rochester, N.Y., of counsel), for plaintiffs-appellants.

Daniel V. Gsovski, New York City (Walter F. Petzinger, Herzfeld & Rubin, P.C., New York City, Anthony R. Palermo, Harter, Secrest & Emery, Rochester, N.Y., of counsel), for defendant-appellee.

Before MESKILL, CARDAMONE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This litigation originated as a class action suit brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (1982) ("Magnuson-Moss," "the Act"), involving alleged defects in the oil systems of Volkswagen Rabbits. The district court dismissed the class action for lack of subject matter jurisdiction. It concluded that

only 75 of the 119 named plaintiffs had viable claims for relief, and thus that the Act's unique jurisdictional provision requiring a minimum of 100 named plaintiffs to bring a class action in a federal court had not been satisfied. The remaining individual claims were dismissed on the ground that they did not meet the joinder requirements of Rule 20(a), Fed.R.Civ.P., and thus could not be aggregated to satisfy another of the Act's jurisdictional provisions requiring a total amount in controversy of at least $50,000. *Abraham v. Volkswagen of America, Inc.*, 103 F.R.D. 358 (W.D.N.Y. 1984).

We hold that: (i) the district court used an improper procedure in resolving the 100 named plaintiffs jurisdictional question; (ii) implied warranty claims brought under the Magnuson-Moss Act are subject to state law privity rules; (iii) the express warranties in this case do not cover automobile defects manifesting themselves after expiration of the time/mileage limits of the relevant warranties; (iv) joint owners of automobiles may be counted only once toward satisfaction of the 100 named plaintiffs requirement; and (v) joinder of the remaining plaintiffs should have been allowed under Rule 20(a). We affirm in part, reverse in part, and remand.

## BACKGROUND

The 119 plaintiffs are owners of Volkswagen Rabbits, model years 1975–79. They brought a class action lawsuit against the manufacturer, Volkswagen of America ("VWOA") alleging, *inter alia*, breach of the express warranty given in connection with the sale of each car and breach of the implied warranty of merchantability. Their claim, as originally stated, was that the oil system in the 1975–79 Rabbits was defective, causing excessive oil consumption, engine damage and failure, and decreased resale value of the cars. Not all plaintiffs claim to have suffered each form of damage, but all claim to have suffered

at least one of the varieties specified. The complaint, as later amended, alleged that the damages claimed resulted from a single defective part, the valve stem seal, which is supposed to prevent oil from leaking into the engine's combustion chamber. The seal allegedly was made of an inferior material that caused it to harden and crack prematurely, which in turn led to oil leakage and the other types of damage claimed.

Federal jurisdiction was invoked under the Magnuson-Moss Act. 15 U.S.C. §§ 2301–2312 (1982). This Act applies to all sales of consumer products in which a written warranty is given.[1] Section 2310(d)(1) of the Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Act], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief...." 15 U.S.C. § 2310(d)(1). Federal and state courts have concurrent jurisdiction over Magnuson-Moss actions, *id.* § 2310(d)(1)(A), (B), but no claim is cognizable by a federal court if: (i) the amount in controversy of any individual claim is less than $25; (ii) the total amount in controversy is less than $50,000; or (iii) the action is brought as a class action by fewer than 100 named plaintiffs. 15 U.S.C. § 2310(d)(3)(A), (B), (C).

VWOA moved to dismiss the class action claims on the ground that the 100 named plaintiffs requirement was not satisfied and that the court thus lacked subject matter jurisdiction. It also moved to sever, and then dismiss for lack of subject matter jurisdiction, the individual damage claims on the ground that they did not satisfy the joinder requirements of Fed.R.Civ.P. 20(a) and thus could not be aggregated toward the $50,000 requirement.

VWOA sought discovery in connection with its motion to dismiss the class action for failing to comply with the 100 named plaintiffs requirement. The plaintiffs op-

---

**1.** Inexpensive products are excluded from many of the statute's provisions. *See* 15 U.S.C. §§ 2302(e), 2303(d) (limiting applicability to products costing more than, respectively, $5.00 and $10.00).

posed discovery on the ground that it was a "merits inquiry" that was improper in determining a subject matter jurisdiction question. Following *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1519–21 (D.D.C. 1984), the district court held, however, that the 100 named plaintiffs requirement could not be determined merely by examining the face of the complaint. 103 F.R.D. at 360–61. The district court stated that if individual claims could not be examined on the merits at the jurisdiction stage, "plaintiff could simply open up the local telephone directory and find 99 other individuals willing to place their names on a complaint and thereby defeat a motion to dismiss and permit the lone individual to proceed with discovery." *Id.* at 361. The district court thus required the 119 named plaintiffs to answer interrogatories and comply with document requests regarding the details of tneir individual damage claims, such as place of purchase and mileages at which breakdowns had occurred.

The district court then proceeded to determine which individual claims should be counted. Again following *Walsh*, 588 F.Supp. at 1521, it held that joint owners [2] named in the complaint as owners of Rabbits could be counted only once toward satisfaction of the 100 named plaintiffs threshold. 103 F.R.D. at 361–62. Thirteen pairs of plaintiffs fell into this category. The district court also ruled that express warranty claims for damage that occurred outside the time/mileage limits of the warranty were barred as a matter of law. 103 F.R.D. at 362. For 1975 Rabbits, the manufacturer's warranty covered the first 24 months or 24,000 miles, whichever came first. For 1976–79 Rabbits, the relevant coverage was 12 months or 20,000 miles. Evidence obtained during discovery revealed that 59 plaintiffs had claims for damage occurring after their respective express warranties had expired. Finally, the district court held that implied warranty claims were subject to the privity require-

ments of the law of the state in which the particular vehicle was purchased. The court determined that at least five relevant states—New York, New Jersey, Illinois, Indiana, Wisconsin (and perhaps Ohio, *see* Note 12 *infra*)—required privity as an element of a valid implied warranty claim. Thirty-one plaintiffs had purchased their Rabbits in these five states and were not in privity with VWOA.

The final step in the district court's jurisdictional inquiry was a compilation of the named plaintiffs who possessed no valid claim. The court read the Act as requiring 100 named plaintiffs with either a valid express *or* implied warranty claim. 103 F.R.D. at 361 (citing *Walsh*, 588 F.Supp. at 1538). This holding is not challenged on appeal.

The named plaintiff count was reduced from 119 to 106 after subtraction of 13 joint owners. Fifty-nine plaintiffs were also found to have invalid express warranty claims. Of these 59, 31 were not in privity with VWOA and had purchased Rabbits in states requiring privity. These 31 thus had neither a valid express nor implied warranty claim against VWOA. The further subtraction of 31 yielded a final named plaintiff count of 75. The district court thus dismissed the class action for failure to meet the 100 named plaintiffs jurisdictional threshold of Section 2310(d)(3)(C).

The court next addressed the second element of the motion to dismiss—the motion to sever all remaining individual claims, and then to dismiss each one for lack of federal jurisdiction. This question turned on whether the $50,000 amount in controversy requirement of Section 2310(d)(3)(B) was satisfied. None of the 75 remaining plaintiffs claimed individual damage of that magnitude. However, individual claims may be aggregated toward satisfaction of the $50,000 requirement if the claims satisfy the requirements for joinder under Rule

---

**2.** The pairs of persons named in the complaint were all joint titleholders, not merely people who happened to use the same automobile. Both can assert a claim for damage. The dis-

trict court's ruling did not dismiss the multiple plaintiffs claiming damage to the same car, however, but merely refused to count them more than once for jurisdictional purposes.

20. 15 U.S.C. § 2310(d)(3)(B). *Saval v. BL Ltd.*, 710 F.2d 1027 (4th Cir.1983). The aggregate damage claims of the 75 remaining plaintiffs did exceed $50,000, but the court concluded that Rule 20 had not been satisfied. 103 F.R.D. at 363–64.

In denying joinder, the district court focused on Paragraph 22 of the First Amended Complaint, which alleged defects in a variety of components in the oil system, such as the oil pan, valve stem seals, and oil warning light. The answers to interrogatories revealed that some of the alleged defects had occurred on some cars but not others, and that some plaintiffs had needed repairs at 20,000 miles while others had not needed them until 80,000 miles. The court concluded that this disparity in timing of problems made the driving and maintenance history of each car vitally important to proof of each individual claim, 103 F.R.D. at 364, and thus held that the 75 plaintiffs had not satisfied the "same transaction or occurrence" test of Rule 20. It then dismissed all of the remaining individual claims.

Plaintiffs moved for reconsideration on the joinder issue, and for permission to amend the complaint to clarify the nature of the defect alleged. Permission to amend was granted. The substituted paragraphs of the complaint are set out in the margin.[3] They were designed to make clear that the same defect—the faulty valve stem seal—was alleged to be at fault in every case, and that the differences noted by the court, such as mileage disparities, went only to the amount of damage and not to the basis of liability. The district court was unpersuaded, however, and on June 25, 1985, again dismissed the action "for substantially the reasons set forth" in its earlier decision.

On appeal, the plaintiffs claim that the district court erred (i) in scrutinizing the

merits of individual claims before ruling on the 100 named plaintiffs jurisdictional issue; (ii) in holding that state law privity rules apply to implied warranty claims under Magnuson-Moss; (iii) in holding that no valid written warranty claim can be made for damage occurring outside the applicable time/mileage limits of the warranty; (iv) in holding that joint owners of automobiles may only be counted as one plaintiff for jurisdictional purposes; and (v) in holding that the 75 remaining plaintiffs did not meet the Rule 20 requirement for joinder. For reasons stated *infra*, we address all these issues.

## DISCUSSION

### 1. *The 100 Named Plaintiffs Jurisdictional Requirement*

■ The plaintiffs contend that the district court should not have allowed discovery and scrutinized the merits of individual claims in deciding whether the 100 named plaintiffs jurisdictional threshold was met. The usual rule is that "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). In *Bell*, plaintiffs sued FBI agents alleging that the agents had violated their fourth and fifth amendment rights, and seeking to recover damages suffered as a result of those violations. The Supreme Court held that a complaint may not be dismissed for lack of jurisdiction because it fails to state a cause of action on which the plaintiff can recover. *Id.* Plaintiffs in the present case thus argue that the district court violated the rule established in *Bell* by assessing the legal validity of the claims of the named plaintiffs on the merits before holding that it lacked jurisdiction over the case.

**3.** The amendment substituted, under the heading "(DEFECT);" the following paragraphs:

21. The material used in valve stem seals of the Rabbits was defective and unfit for its ordinary purpose.

22. Under the Rabbits' ordinary operating conditions, these seals gradually and prematurely hardened and cracked, allowing excessive amounts of oil to flow into the combustion chamber and burn.

23. As a result, the Rabbits consumed excessive oil.

VWOA contends, however, that this rule does not apply when federal jurisdiction is invoked under a statute with special jurisdictional requirements, such as Magnuson-Moss, rather than under 28 U.S.C. § 1331, which establishes general federal question jurisdiction. VWOA claims that a "merits inquiry" is permissible before asserting subject matter jurisdiction because the purpose of the Magnuson-Moss jurisdictional requirements is to limit plaintiffs' access to the federal courts. At least one court has concluded that "it must look closely at each plaintiff to determine whether he states a claim for relief before he may be counted towards meeting the 100-named plaintiff requirement." *Walsh*, 588 F.Supp. at 1520.

VWOA analogizes Magnuson-Moss to other specialized grants of federal jurisdiction such as the Alien Tort Act, 28 U.S.C. § 1350,[4] and the Mandamus Act, 28 U.S.C. § 1361.[5] Under these statutes, it is argued, federal courts make a preliminary inquiry into the merits before deciding whether jurisdiction is properly invoked. *See Filartiga v. Pena-Irala*, 630 F.2d 876, 887–88 (2d Cir.1980) ("more searching preliminary review of the merits" under Alien Tort Act than under more flexible federal question jurisdiction); *National Treasury Employees Union v. Campbell*, 589 F.2d 669, 676 n. 14 (D.C.Cir.1978) ("determination on the merits is in effect required" under Mandamus Act before jurisdictional question can be decided) (dictum). Based on these precedents, VWOA argues that the district court's analysis in this case was not only proper but was required by the statute.

The legislative history of the Magnuson-Moss Act offers limited insight into the 100 named plaintiffs requirement. The Subcommittee on Commerce and Finance of the House Committee on Interstate and Foreign Commerce held six days of hearings in September-October 1971 on several versions of what would eventually become the Act. However, neither the bill that was reported out to the full committee, nor the other bills under consideration at that time, contained sections resembling the jurisdictional restrictions later enacted. *Consumer Warranty Protection: Hearings before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and Foreign Commerce*, 92d Cong., 1st Sess. 6–96 (1971) [hereinafter cited as "1971 Hearings"]. No bill ever reached the full House, although a bill, also lacking these unique jurisdictional provisions, did pass the Senate. S. 986, 92d Cong., 1st Sess. (1971). *See* S.Rep. No. 151, 93d Cong., 1st Sess. 6 (1973) [hereinafter cited as "Senate Report"].

The next set of Magnuson-Moss hearings considered a bill bearing some resemblance to the one that eventually passed. H.R. 20, 93d Cong., 1st Sess. (1973), *reprinted in Consumer Warranty Protection: Hearings on H.R. 20 and H.R. 5021 before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and Foreign Commerce*, 93d Cong., 1st Sess. 3–28 (1973) [hereinafter cited as "1973 Hearings"]. It limited federal jurisdiction to cases in which the total amount in controversy exceeded $10,000, and each claim exceeded $25, 1973 Hearings, *supra* at 14, but did not contain the 100 named plaintiffs requirement.

The class action issue arose during the 1973 Hearings, however. During the testimony of Professor Leary of the University of Pennsylvania Law School, the discussion turned to the bill's jurisdictional requirements, specifically the class action remedy. Representative Eckhardt stated his view that federal court class actions would be subject to the normal requirements of Rule 23, as well as to the $10,000/$25 limitations in the bill. 1973 Hearings, *supra* at 111–

---

**4.** This section provides:
 The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.

**5.** This section provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

12. He believed that these requirements would channel the majority of cases into the state courts, leaving only large cases for the federal courts. *Id.* Representative Young also questioned Professor Leary about the problems of some federal courts in managing class actions. *Id.* at 114. Leary stated his view that the $10,000 aggregation of claims requirement would bar most class actions since it would be difficult to amass enough warranty claims with sufficient commonality to satisfy Rule 23. Representative Young suggested that one plaintiff with a $25 claim would be able to bring a federal class action by aggregating claims on behalf of all unnamed persons, provided that the item involved was a widely sold consumer product. In response, Professor Leary raised the possibility of "a minimum requirement for a number of individual, named, plaintiffs ... so that there would have to be some reasonable group in the area where the suit is started that the attorney knows about." *Id.* This statement may well have been the seed that germinated into the 100 named plaintiffs requirement, which was added sometime between the conclusion of the hearings and the issuance of the House Report in June 1974. *See* H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 7702, 7724 (first mention in legislative history of 100 named plaintiffs requirement) [hereinafter cited as "House Report"].

The House Report offers the only direct evidence regarding the intent underlying the 100 named plaintiffs provision. After listing the limits Section 2310(d)(3) places on federal jurisdiction, the Report states:

The purpose of these jurisdictional provisions is to avoid trivial or insignificant actions being brought as class actions in the federal courts. However, if the conditions of this section are met by a class of consumers damaged by a failure to comply with a warranty as defined in Title I or a violation of Title I, Section 110(d) should be construed reasonably to authorize the maintenance of a class action. In this context, your Committee would emphasize that this section is re-medial in nature and is designed to facilitate relief which would otherwise not be available as a practical matter for individual consumers.

House Report, *supra,* 1974 U.S.Code Cong. & Ad.News at 7724.

This language, although very general, does provide some guidance. On the one hand, a federal class action may not be utilized as a remedy for breach of warranty unless the damage caused thereby is relatively widespread. This policy is implemented by the 100 named plaintiffs requirement. On the other hand, where such damage is widespread, an effective federal remedy should be available. Balancing these goals, we adopt the following rules: The principles of *Bell v. Hood* should govern the determination of subject matter jurisdiction and certification of a class should occur pursuant to the usual procedures followed under Rule 23, Fed.R.Civ.P., although 100 plaintiffs must be alleged to be members of the class. However, if, in the course of the litigation, some named plaintiffs are dismissed before trial and the number falls below 100, enough plaintiffs with *prima facie* claims must be added to reach 100, or the class must be decertified. Our reasoning follows.

Absent compelling reasons to the contrary, *Bell v. Hood* governs the initial determination of subject matter jurisdiction in the federal courts. The present case is distinguishable from *Bell* in that it involves a specific, narrow grant of federal jurisdiction; therefore, a different threshold inquiry is arguably appropriate. However, none of the statutes relied upon by VWOA as support for an extensive preliminary jurisdictional inquiry require a court to evaluate the ultimate likelihood of success on the merits. In *Filartiga*, we held that under the Alien Tort Act a plaintiff is required to allege a violation of the law of nations. 630 F.2d at 887. This inquiry requires a court merely to examine the parameters of the law of nations, not to assess a plaintiff's likelihood of prevailing on the merits. Similarly, the inquiry required under the Mandamus Act is whether

a violation of ministerial duty is alleged, not whether the plaintiff can prove a violation of that duty.

■■■■ Considerations of judicial efficiency weigh against rules that require extensive discovery, evidence, and analysis going to the merits of individual claims solely to determine subject matter jurisdiction. Not only is there the prospect of delay—in the present case, nearly 18 months passed between the filing of the first amended complaint and the first jurisdictional ruling of the district court—but also the likelihood of later duplicative discovery if jurisdiction is found. We thus hold that if a Magnuson-Moss class action complaint sets forth 100 named plaintiffs, the limited inquiry normally pursued in class action cases is appropriate. However, the complaint must allege sufficient facts about each plaintiff to establish that they are members of the proposed class.[6] There is, therefore, no serious danger that plaintiffs can be culled at random from telephone books.

Class certification, notice to class members, motions to dismiss for failure to state a claim under Rule 12(b)(6), discovery, and motions for summary judgment will then occur in the usual course. It is of course possible that dismissals under 12(b)(6) or grants of summary judgment will cause the number of named plaintiffs to fall below 100. Plaintiffs argue that even if the number of named plaintiffs drops below 100, the class action may nevertheless continue. We disagree. Such a rule would be contrary to Congress' intent that a Magnuson-Moss class action in federal court should involve widespread damage resulting from a legally redressable breach of warranty as demonstrated by 100 named plaintiffs. A class action in which fewer than 100—perhaps 10 or even 1—plaintiffs

have claims capable of surviving dismissal or summary judgment motions would be a "trivial or insignificant" action, House Report, *supra*, 1974 U.S.Code Cong. & Ad. News at 7724, and the federal forum should not be available.

Requiring that 100 named plaintiffs have a case strong enough to go to trial does no more than apply the procedure followed in class actions generally to the unique provisions of Magnuson-Moss. In the typical class, there must at all times be a named plaintiff if the action is to proceed. When all of the originally named plaintiffs in a class action are dismissed on grounds that may not be applicable to all class members, notice is usually sent to the class members, and one of the other class members must be substituted if the action is to continue.[7] *See Robinson v. First National City Bank*, 482 F.Supp. 92, 100 (S.D.N.Y.1979); *Brookhaven Housing Coalition v. Sampson*, 65 F.R.D. 24, 25–26 (E.D.N.Y.1974).

■■■■ Should it ultimately appear that fewer than 100 plaintiffs have a claim sufficient to go to trial, the class should be decertified and the dismissal or continuance of the action should be determined by the other Magnuson-Moss jurisdictional requirements. 15 U.S.C. § 2310(d)(3)(A), (B). However, in cases in which the number of named plaintiffs drops below 100, the remaining plaintiffs should be given a reasonable opportunity to substitute new named plaintiffs in order to bring the number back up to 100. Once it is determined that there are 100 named plaintiffs with claims sufficient to go to trial, the district court's inquiry is at an end.

The procedure followed in the district court was therefore incorrect. To remand without addressing the other issues briefed

---

**6.** Fewer than 100 named plaintiffs may not initiate a class action simply by promising to add more named plaintiffs at a later date. *See Lieb v. American Motors Corp.*, 538 F.Supp. 127, 132 (S.D.N.Y.1982); *Watts v. Volkswagen Artiengesellschaft*, 488 F.Supp. 1233, 1236 (W.D.Ark. 1980).

**7.** Many of the 100 named plaintiffs will have significance only for jurisdictional purposes, since all of them need not serve as class representatives in the conduct of the litigation. The courts that have certified Magnuson-Moss class actions generally have allowed only a few of the named plaintiffs to act as representatives, since such a large number is neither necessary nor desirable. *See, e.g., Skelton v. General Motors Corp.*, 1985–2 Trade Cas. (CCH) ¶ 66,683, at 63,-217 (N.D.Ill.1985).

and argued before us, however, would not further the progress of this case. We will address other issues to the extent they are likely to arise again on remand.

### 2. *Implied Warranty and State Law Privity*

■ The district court held that state law privity rules are applicable to implied warranty claims brought under Magnuson-Moss. 103 F.R.D. at 362. The effect of this holding was to dismiss implied warranty claims by owners who purchased used Rabbits and whose claims are governed by the law of a state that requires privity to enforce an implied warranty.

The language of the statute would seem to support the conclusion reached by the district court. An "implied warranty" is defined as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) ...) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). The "arising under" phrase strongly suggests that the obligations of the warranty are solely the creation of state law, an inference further strengthened by the explicit reference to "modifications" of such state law elsewhere in the Act, none of which deal with privity.

Plaintiffs counter with an argument based on other statutory language, however. Section 2308 provides that a "supplier" may not disclaim an "implied warranty" for the duration of any written warranty that it extends, while Section 2310(d)(1) provides in relevant part that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a[n] ... implied warranty ... may

bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The statutory definition [8] of "consumer" includes "any person to whom [the] product is transferred during the duration of an implied or written warranty." 15 U.S.C. § 2301(3). Similarly, under the Act's definition of "supplier," a consumer can sue any party in the chain of production and distribution regardless of privity. 15 U.S.C. § 2301(4); House Report, *supra*, 1974 U.S. Code Cong. & Ad.News at 7717. Reading these provisions literally, they appear to provide for an action by a consumer without privity against a supplier on an implied warranty arising under the law of a state that does not allow transferees without privity to sue.

Conceding the anomaly, we turn to the legislative history. First, it is clear that Congress intended to restrict the ability of sellers to disclaim the warranties implied under state law. Prior to passage of Magnuson-Moss, the common practice of many sellers was to provide a written warranty that offered minimal protection and disclaimed all implied warranties. This practice often placed the consumer in a worse contractual position than if no warranty at all had been given, because implied warranty protection under the Uniform Commercial Code is often more extensive than the express warranty given by a seller. House Report, *supra*, 1974 U.S. Code Cong. & Ad. News at 7706. Because the very term "warranty" implies an increase in contractual protection to consumers, warranties that were largely disclaimers were in a real sense misleading.

Several sections of the Act thus ensure that a consumer with a written warranty

---

**8.** The full text of the relevant definitions is as follows:

(3) The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, *any person to whom such product is transferred during the duration of an implied or written warranty* (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warran-

tor (or service contractor) the obligations of the warranty (or service contract).

(4) The term "supplier" means any person engaged in the business of making a consumer product *directly or indirectly available* to consumers.

(5) The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.

15 U.S.C. § 2301(3), (4), (5) (emphasis supplied).

also enjoys implied warranty protection. *Id.* at 7721–22. Implied warranties: (i) may not be disclaimed if a written warranty, "full" or "limited," [9] is given, 15 U.S.C. § 2308(a); (ii) may not be limited in duration if a full warranty is given, 15 U.S.C. § 2304(a)(2); and (iii) may be limited to the duration of a limited warranty only if the time limitation is not unreasonable or unconscionable, 15 U.S.C. § 2308(b). A seller is thus still free to offer a relatively worthless written warranty, 15 U.S.C. § 2303(a)(2), but by doing so is barred from disclaiming implied warranties arising under state law. 15 U.S.C. § 2308(a). The restrictions on a seller's power to disclaim implied warranty protection while giving a written warranty is thus a major change in the law of warranties.

Second, it is clear that with regard to written warranties, full or limited, privity is not required and transferees of the original purchaser may enforce them during their effective period. This result flows directly from the statutory definitions of "consumer," "supplier" and "warrantor," and from the enforcement provisions authorizing actions by consumers for breach of a written warranty. 15 U.S.C. § 2310(d). The 1971 bills did not contain such broad definitions and thus allowed sellers to restrict written warranties to original purchasers. *See* 1971 Hearings, *supra,* at 7–9, 22, 58, 62–63, 78. The definitions were altered during the legislative process prior to enactment. In making these changes, however, Congress did not focus on the privity requirements of state law regarding implied warranties but considered only the effect on written warranties. *See* House Report, 1974 U.S. Code Cong. & Ad. News 7717 ("where a warranty or service contract on a consumer product is given for a specified duration *it* would cover transferees who use the product") (emphasis supplied). The legislative history thus adequately explains

the limits on a supplier's power to disclaim implied warranties and the abolition of privity with regard to written warranties. This explanation does not, however, illumine the import of the anomaly in the statutory language described above.

■ The legislative history of the provisions regarding implied warranties is more explicit and supports the view that state privity requirements applicable to such warranties were not supplanted by Magnuson-Moss. Section 2301(7), the "arising under State law" definition of implied warranty, was added to the House bill after the 1973 hearings. *See* H.R. 20, *reprinted in* 1973 Hearings, *supra,* at 3–28. The Senate bill as passed did not define implied warranty. *See* Senate Report, *supra,* at 11–14. However, it did include a version of what eventually became 15 U.S.C. § 2308, the section limiting a seller's power to disclaim implied warranties. The Senate Report states:

> It is not the intent of the Committee to alter in any way the manner in which implied warranties are created under the Uniform Commercial Code. For instance, an implied warranty of fitness for particular purpose which might be created by an installing supplier is not, in many instances, enforceable by the consumer against the manufacturing supplier. The Committee does not intend to alter currently existing state law on these subjects.

Senate Report, *supra,* at 21.

Because the Conference did not modify Section 2308 in a way relevant to the question we are considering—it adopted the House version allowing a warrantor to limit the duration of an implied warranty to the duration of the written limited warranty, H.R.Rep. No. 1606, 93d Cong., 2d Sess. 1–2 (1974) (conference report)—and because the Conference's adoption of the

---

**9.** Section 104, 15 U.S.C. § 2304, which defines the standards that must be met before a warranty may be labelled "full", is captioned "Federal minimum standards for warranties." However, a manufacturer need not give a full warranty (or any written warranty, for that matter), and a written warranty not meeting the "minimum standards" need only be designated a "limited warranty." 15 U.S.C. § 2303(a)(2). The vast majority of consumer warranties are in fact limited warranties.

House's "arising under state law" definition of implied warranty is fully consistent with the statement in the Senate Report, *id.* at 2, we believe that state law, including privity requirements, governs implied warranties except where explicitly modified by Sections 2308 and 2304(a).

Plaintiffs argue that privity is an "antiquated" defense and that the Act's definitional provisions reflect a general purpose to do away with it. The statement in the Senate Report wholly undercuts these arguments. The Uniform Commercial Code creates two implied warranties pertinent to our inquiry: (i) of merchantability, § 2–314,[10] and (ii) of fitness for a particular purpose, § 2–315.[11] The controversy over privity, however, exists only in the case of the implied warranty of merchantability, which arises automatically in every sale of goods by one who is a merchant in those goods. U.C.C. § 2–314. In contrast, the implied warranty of fitness for a particular purpose, U.C.C. § 2–315, does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge. To have a cause of action for breach of an implied warranty of fitness, therefore, privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller. The Senate Report recognized this and explicitly stated that state law was to govern. However, the Report in no way limited the proposition stated to the implied warranty of fitness. Rather it used the implied warranty of fitness as an example illustrating the proposition that state law governed implied warranties generally.

Both the statutory language and the legislative history, therefore, indicate that Congress did not intend to supplant state law with regard to privity in the case of implied warranties.[12]

### 3. *Time/Mileage Limits on Express Warranties*

Plaintiffs also argue that a defect discovered outside the time or mileage limits of the applicable written warranty, but latent before that time, may be the basis of a valid express warranty claim if the warrantor knew of the defect at the time of sale. The district court, relying again on *Walsh,* concluded that a buyer holding a warranty with an express limitation as to the time or mileage bears the risk of repairs that become necessary beyond that period. *Abraham,* 103 F.R.D. at 362. The *Walsh* court, in a more extensive discussion of the issue, relied on several state court cases in holding that "latent defects" discovered after the term of the warranty

**10.** That section provides in part:
§ 2–314. *Implied Warranty: Merchantability; Usage of Trade*
(1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
U.C.C. § 2–314 (1978).

**11.** That section provides:
§ 2–315. *Implied Warranty: Fitness for Particular Purpose*
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.
U.C.C. § 2–315 (1978).

**12.** The parties are in disagreement over the exact number of plaintiffs excluded by the privity requirement, which states are involved, and what the law of those states is. We assume that the parties will be able to enter into a stipulation as to the first two matters on receipt of this opinion. As to whether particular states require privity for the enforcement of implied warranties under Magnuson-Moss, we hold that: (i) Illinois, Indiana and Ohio require privity, for the reasons stated in *Walsh,* 588 F.Supp. at 1529–30, 1533–34; (ii) New Jersey does not require privity. *Spring Motors Distribs. Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660 (1985). Appellants do not contest the district court's ruling with respect to New York and Wisconsin law.

are not actionable under the warranty. *Walsh*, 588 F.Supp. at 1536.

Relying on *Alberti v. General Motors Corp.*, 600 F.Supp. 1026 (D.D.C.1985), plaintiffs seek to distinguish the present case on the ground that the post-warranty failures alleged here resulted from latent defects known to VWOA at the time of sale. The court in *Alberti* held that the plaintiffs there stated valid express warranty claims, without regard to when breakdowns had occurred, because General Motors allegedly knew at time of sale that the brake system on the cars in question was flawed and might cause control problems for drivers. 600 F.Supp. at 1028. The alleged defect thus "did not remain 'latent' ... but, rather, was patent—at least to GM." *Id.* Plaintiffs here allege similar knowledge on VWOA's part as to the inferior nature of the valve stem seals.

The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed. *See Broe v. Oneonta Sales Co.*, 100 Misc.2d 1099, 1101, 420 N.Y.S.2d 436, 437 (Sup.Ct.1978); *Moulton v. Ford Motor Co.*, 13 U.C.C.Rep.Serv. 55, 59 (Tenn.Ct. App.1973), *aff'd in relevant part*, 511 S.W.2d 690, 694 (Tenn.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974); *see also Taterka v. Ford Motor Co.*, 86 Wis.2d 140, 150, 271 N.W.2d 653, 657 (1978). Plaintiffs argue, however, that the present case falls within the limited exception recognized in *Alberti*. We do not find the reasoning of *Alberti* persuasive and decline to follow it. The language of the decision itself suggests that the court confused concepts of implied and express warranty. The decision thus speaks of General Motors breaching its warranty that the cars would be "merchantable and fit for the purpose of providing the ordinary transportation ... expected of them." *Alberti*, 600 F.Supp. at 1028. These terms and concepts are usually associated with the implied warranty of merchantability, as opposed to the type of limited express warranty at issue in this case and actually at issue in *Alberti*.

Moreover, virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

### 4. *Joint Owners*

Plaintiffs argue that the district court erred in counting joint owners of vehicles as a single owner for purposes of the 100 named plaintiffs question. The district court refused to count 13 plaintiffs because they claimed damage for a vehicle also claimed by another plaintiff. 103 F.R.D. at 361–62. Plaintiffs challenge the district court's conclusion, stressing that the statute speaks merely of "plaintiffs," not of vehicles, and that joint ownership status gives both parties a right to sue for damage to the common vehicle. *See* Note 2, *supra*.

We agree with the district court's conclusion. Although the statute deals only with the number of plaintiffs, the legislative history makes clear that the extent of the product defect is the controlling consideration. It is the number of damaged products, not the number of persons claiming damage, that determines whether a class action is "insignificant" or substantial for purposes of Magnuson-Moss. Thus, joint owners should be counted only once toward the 100 named plaintiffs requirement. This holding does not mean that claims asserted by joint owners must be dis-

missed, but merely that they may not be counted more than once for class action jurisdictional purposes. *See Walsh*, 588 F.Supp. at 1521.

### 5. *Joinder of Remaining Plaintiffs*

 The district court declined to permit joinder of the 75 plaintiffs remaining after others had been excluded as not having valid implied or express warranty claims. We believe the refusal to permit joinder was an abuse of discretion.

Rule 20(a) requires that the claims for relief asserted by each plaintiff must lead to or arise out of the same transaction or occurrence or series of transactions or occurrences, and that some question of law or fact common to all parties will arise in the litigation.[13] The district court held that because some of the defects alleged did not occur on all cars and the mileage at which repairs were required varied greatly, the plaintiffs had not satisfied the same transaction or occurrence requirement.

We believe that the amendment to the complaint, *see* Note 3, *supra*, alleging the faulty valve stem seal as a single defect that caused the various damages, satisfied the same transaction or occurrence (or series thereof) requirement. All plaintiffs now allege as the basis for their claims the purchase of a Volkswagen Rabbit with a valve stem seal made of defective material that will cause it to harden and break over time. We think that amply satisfies the requirement of a series of logically related transactions. *See* 7 C. Wright and A. Miller, *Federal Practice and Procedure* § 1653 (1972). To hold otherwise would largely read the $50,000 aggregation provision for federal jurisdiction out of the Act. Because it is indisputable that the remaining plaintiffs raise common questions of law and fact, the second requirement of Rule 20(a) is also satisfied.

## CONCLUSION

Although we hold that the district court used an improper procedure in addressing the 100 named plaintiffs requirement, it is clear that many plaintiffs must be dismissed and that the remaining plaintiffs amount to substantially fewer than 100. We believe it would serve no purpose to reverse those dismissals only to remand them to the certainty of another dismissal. We direct the parties to confer and seek to agree upon which dismissals must be affirmed under the guidelines established in this opinion. The clerk should be so informed within 10 days of this opinion. Upon remand, however, plaintiffs should be given an opportunity to substitute new named plaintiffs in an effort to satisfy the 100 named plaintiffs threshold requirement. Had the class been certified and the number of plaintiffs subsequently reduced to 75, plaintiffs would have had a right to notify members of the class of the opportunity to become a named plaintiff. *See supra.* On remand, a substantially equivalent opportunity should be made available to plaintiffs to make such a notification if they choose. Thereafter, proceedings should proceed in a manner consistent with this opinion.

Affirmed in part, reversed in part and remanded.

---

**13.** Rule 20(a), Fed.R.Civ.P., reads in pertinent part:

> *Permissive Joinder*
>
> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.