Hugh **DEADWYLER**, et al., Plaintiffs,

v.

**VOLKSWAGEN OF AMERICA, INC.,
and Volkswagenwerk, AG,**
Defendants.

No. ST–C–85–38.

United States District Court,
W.D. North Carolina,
Statesville Division.

Jan. 14, 1991.

See also 748 F.Supp. 1146.

B. Ervin Brown, II, Moore and Brown, Winston–Salem, N.C., Beverly C. Moore, Jr., Washington, D.C., Carl Shoolman, Rochester, N.Y., for plaintiffs.

Bynum M. Hunter, Catherine C. Eagles, Greensboro, N.C., William F. Womble, Jr., Robert C. Dortch, Jr., Winston–Salem, N.C., Daniel V. Gsovski, Ivan Lawner, New York City, Charles R. Watkins, Chicago, Ill., Norman B. Smith, Greensboro, N.C., R. Stephen Hansel, Indianapolis, Ind., John W. Grigg, Bay City, Mich., for defendants.

## MEMORANDUM AND ORDER

WOODROW WILSON JONES, District Judge.

The Defendants, Volkswagen of America, Inc. and Volkswagenwerk, AG, move the Court for an order imposing appropriate sanctions upon B. Ervin Brown, II, Esquire, Beverly C. Moore, Jr., Esquire, and/or Carl Shoolman, Esquire, pursuant to Rule 11, Federal Rules of Civil Procedure, Title 28 U.S.C.A. Section 1927 and the inherent powers of the Court. The Defendants seek by their motion, sanctions, expenses and attorney fees against the three attorneys for their actions and conduct in connection with the above entitled case and the alleged nearly identical action of *Abraham v. Volkswagen of America, Inc.*, which was brought in the Western District of New York. The motion was filed on August 10, 1990 and the Court scheduled and heard arguments of counsel on the motion in Statesville, North Carolina on November 19, 1990.

On November 28, 1990, some ten days after the hearing on the Defendants' motion for sanctions the Plaintiffs' counsel moved for sanctions against the Defendants' counsel for filing the motion for sanctions against them. The Court will act upon all the motions without further hearing or briefing as all aspects of the issues have been argued and briefed. After due consideration of the motions, pleadings,

files, briefs, affidavits, arguments, the proposed findings and conclusions of the parties and the opinion and order of remand of the Court of Appeals for the Fourth Circuit the Court now enters its findings and conclusions.

## BACKGROUND OF LITIGATION

The motions in this cause arose out of a nationwide class action against Volkswagen for alleged breach of warranty of merchantability under the Magnuson–Moss Warranty Act of 1975, 15 U.S.C.A. Section 2301, et seq., "and for unfair or deceptive acts or practices under state laws similar to Section 5 of the Federal Trade Commission Act." The Plaintiffs alleged that Volkswagen installed defective valve stem seals in the engines of gasoline powered Volkswagen Rabbit automobiles for model years 1976 to 1979, and sought to recover monetary losses due to "excessive oil consumption, consequent major or catastrophic engine damage, and/or diminished resale market value."

Plaintiffs' counsel, Mr. Shoolman, instituted the first action entitled, *Irwin Abraham and others, v. Volkswagen of America, Inc.,* in the Western District of New York, on February 23, 1983 and the case was assigned to United States District Judge, Michael A. Telesca. In 1984 the District Judge dismissed the class action concluding that only 75 of the 119 named plaintiffs had viable claims for relief, and thus that the Act's unique jurisdictional provision requiring a minimum of 100 named plaintiffs to bring a class action in a federal court had not been satisfied. The remaining individual claims were dismissed on the ground that they did not meet the joinder requirements of Rule 20(a), Federal Rules of Civil Procedure, and thus could not be aggregated to satisfy another of the Act's jurisdictional provisions requiring a total amount in controversy of at least $50,000.00. *Abraham v. Volkswagen of America, Inc.,* 103 F.R.D. 358 (W.D.N.Y. 1984). *Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238 (2nd Cir.1986).

Following the dismissal plaintiffs' counsel filed an amended complaint in an effort to cure the deficiencies noted in Judge Telesca's opinion. The defendant filed a renewed motion to dismiss which, after briefs were filed, was argued before Judge Telesca on February 21, 1985. On the same day, that is, February 21, 1985 this action was filed in the Western District of North Carolina, Statesville Division. The complaint filed in this cause is almost identical with the amended complaint filed in *Abraham* stating the same causes of action and using 32 of the same plaintiffs appearing in the *Abraham* case. Both of plaintiffs' attorneys in *Abraham,* Shoolman and Moore, are also involved in the action at bar.

The following acts of counsel are alleged as the basis for the requested sanctions:

1. The complaint in the captioned action alleges seventeen (later reduced to sixteen) state statutory causes of action which are invalidated, unauthorized and/or time-barred by the provisions under which they purport to be brought;

2. This action was filed in the Statesville Division of this district in 1985 in order to secure its assignment to the district judge then assigned to the Statesville Division and to avoid further proceedings in the Western District of New York, where a nearly identical action had been pending for the preceding two years under the caption of *Abraham v. Volkswagen of America, Inc.;*

3. There was at no time during this litigation a class representative, other than counsel, directing, supervising or guiding, or even reasonably informed of, counsels' actions in conducting this litigation; and

4. Plaintiffs' counsel conducted active settlement negotiations in 1986 without specific authority from any plaintiff class representative for any demand made on behalf of any individual plaintiff or the class, and without informing named plaintiffs of the substance of any specific offers made by the defense.

On November 7, 1990 the Defendants filed a "Memorandum on Newly Admitted Bases for Sanctions" which contained the following claim for sanctions:

5. Defendants contend that in this action, Plaintiffs' counsel successfully obtained class certification, resisted Defendants' attempted challenge to certification on writ of mandamus to the Fourth Circuit, avoided summary judgment and took this case to trial on an ostensible "triable issue" as to whether the polyacrylate valve stem seals in 1976–79 Volkswagen Rabbits with gasoline engines were defectively designed. Since the jury's adverse finding on that very issue, Plaintiffs' counsel have repeatedly contended, most recently on the present motion, that this issue was "legally irrelevant," i.e., not a required element of recovery for Plaintiffs and absent class members. In opposition to the present motion they have further stated that they knew of this fact at all relevant times during the conduct of this lawsuit. Defendants contend that prosecuting this action on a knowingly invalid basis in this manner is sanctionable and taints this entire case.

Claims Nos. 3 and 4 are directed only against Mr. Shoolman of the New York Bar as he was the attorney who had the retainer agreements and contact with the class members.

Plaintiffs' counsel moved on November 28, 1990 "for an order pursuant to Rule 11, Federal Rules of Civil Procedure, and 28 U.S.C.A. Section 1927, imposing appropriate sanctions on Defendants and their counsel, Daniel V. Gsovski, Bynum M. Hunter, Catherine C. Eagles, and William F. Womble, Jr., all of whom signed the papers at issue."

### THE LEGAL STANDARDS UNDER WHICH THESE MOTIONS MUST BE JUDGED

#### *Rule 11*

In pertinent part Rule 11 provides that: Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record ... The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose; such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The Rule specifically provides that an attorney's signature certifies that all of its requirements—that a paper is grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not filed for an improper purpose—are met. Departure from these standards requires the imposition of sanctions.

The Supreme Court in the recent case of *Cooter & Gell v. Hartmarx Corp.*, — U.S. ——, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990) held that:

Determining whether an attorney has violated Rule 11 involves a consideration of three types of issues. The Court must consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading or other paper. Legal issues are raised in considering whether a pleading is "warranted by existing law or a good faith argument" for changing the law and whether the attorney's conduct violated Rule 11. Finally, the District Court must exercise its discretion to tailor "an appropriate sanction."

#### *28 U.S.C.A. Section 1927*

In pertinent part Section 1927 provides:

Any attorney ... admitted to conduct cases in any court of the United States ... who so multiplies proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

A careful reading of the statute discloses three essential elements necessary to constitute a violation of its terms:

1. "Unreasonable and vexatious" conduct by an attorney admitted to practice in federal court;

2. The conduct multiplies proceedings in a federal court; and

3. The conduct causes excess costs, expenses and attorney's fees.

The Court will examine and determine each claim separately:

### Claim No. 1

*"The complaint in this cause contained sixteen state statutory causes of action which are invalidated, unauthorized, and/or time-barred by the provisions under which they purport to be brought."*

The Defendants claim that a significant portion of count II of the complaint is sanctionable as contrary to the very statutes it invokes. In count II, counsel for Plaintiffs purported to assert violations of the "unfair and deceptive trade practices" statute of more than forty states in the nation with such a provision. Each of the statutes involved was specifically cited in extensive footnotes to the relevant paragraphs of the complaint. These single-spaced citations occupy all or part of six pages of the complaint. Motions seeking partial or complete dismissal of these claims were filed by the defense in January 1987 and again in April and May. Even though Plaintiffs' counsel did not file any responsive papers the trial judge denied the motions but did so without prejudice which in effect reserved the issues until after the verdict, which of course, mooted them.

The Defendants contend that in sixteen of these states, their inclusion in the litigation was not only without merit but frivolous, in that the statutes involved did not authorize, and in some instances specifically prohibited and/or time barred part or all of the claims set forth by Plaintiffs' counsel.

The specific provisions of the relevant states' statutes are as follows:

*Alabama:* The Alabama Deceptive Trade Practices Act, Ala.Code § 8–19–1, et seq. was not enacted until 1981 by Alabama Acts 1981, No. 81–355. Since the last of the vehicles in question were sold by the Defendants in 1979, the Alabama Act could not apply to any of the conduct alleged in the amended complaint. The Alabama claim is further barred by the applicable statute of limitations, which is one year after date of discovery or the date the violation should have been discovered and no more than four years after the act or transaction in question. Ala.Code § 8–19–14. The Defendants contend that assuming the statute did not commence to run until April 1, 1981 as alleged in the complaint the claim would have been barred when the action was filed.

*Alaska:* Alaska Statutes § 45.50.531(b) required as a prerequisite to the maintenance of a class action the submission of the proposed complaint to the Attorney General and prior approval of the Attorney General before the complaint could be filed. In addition the statute of limitations applicable to these claims is two years after a plaintiff discovers or reasonably should have discovered that his loss resulted from a violation. Alas.Stat. § 45.50.531(f). Defendants contend that assuming the statute was tolled until April 1, 1981, as alleged in the complaint all claims asserted would be barred as to *VWAG.*

*Colorado:* The applicable statute of limitations is three years from date of discovery. Col.Rev.Stats. § 13–80–109. Defendants contend that even if tolled until April 1, 1981, as alleged in the complaint, this provision therefore bars all claims against *VWAG.*

*Connecticut:* The applicable statute of limitations is three years after the violation. Conn.Gen.Stat. § 42–110g(f). Defendants contend that since no defendant man-

ufactured or sold any class vehicle after 1979, this provision therefore bars all claims asserted under the Connecticut statute against *VWAG*.

*Idaho:* The applicable statute of limitations is two years after the cause of action accrues. Ida.Code § 48–619. Defendants contend that even if tolled until April 1, 1981 as alleged by the Plaintiffs, this provision bars all claims against *VWAG*.

*Indiana:* The applicable statute of limitations is two years after the occurrence of the deceptive acts. Ind.Code § 24–5–0.5–5(b). Defendants contend that even if tolled until April 1, 1981, as alleged in the complaint, this provision bars all claims against *VWAG*.

*Kentucky:* The applicable statute of limitations is two years after the alleged violation. Ky.Rev.Stat. § 367.220(5). Defendants contend that even if tolled until April 1, 1981, as alleged in the complaint this provision therefore bars all claims against *VWAG*.

*Louisiana:* Under the Louisiana Unfair Trade Practices and Consumer Protection Law, the statute of limitations is one year from the time of the transaction, La.Rev. Stat. § 51:1409(E), thus barring all claims in this action.

*Massachusetts:* Under the Massachusetts Regulation of Business Practices for Consumers Protection Act, an essential prerequisite to the institution of any consumer action under the Act is the transmission of a demand letter to the Defendants meeting the requirements of the Act. Mass.G.L. Ch. 93A, § 9(3). The demand letter must be in writing, specify at least one Massachusetts' claimant, reasonably describe the action or practice relied upon, describe the unfair or deceptive act or practice relied upon, describe the damages or injuries, and state the relief demanded, and the letter must be mailed or delivered to the respondent at least 30 days before the action is filed under Ch. 93A. The timely transmission of a demand letter meeting the requirements of the Act must be alleged and proved. *York v. Sullivan*, 369 Mass. 157, 338 N.E.2d 341, 346 (1975). Defendants contend that failure to comply with these requirements bars all claims asserted under the Massachusetts Act.

*Nebraska:* Under the Nebraska Uniform Deceptive Trade Practices Act, suit is authorized only for injunctive relief. Neb. Rev.Stat. § 87–303(a). In addition, Nebraska Rev.Stat. § 87–303.10 provides for a one-year statute of limitations "from date of purchase of the goods or services." Defendants contend that even if tolled until April 1, 1981, as alleged by the Plaintiffs, this provision bars all claims in this action arising in Nebraska.

*New Hampshire:* Transactions entered into more than two years prior to the complaint are exempt from the Act. N.H.Rev. Stat.Ann. § 358–A:3 (IV-a). Defendants contend that even if tolled until April 1, 1981, as alleged in the complaint, this provision therefore bars all claims against *VWAG*.

*Ohio:* The applicable statute of limitations, is two years after the alleged violation. Ohio Rev.Code § 1345.10(C). Defendants contend that even if tolled until April 1, 1981, as alleged in the complaint, this provision bars all claims against *VWAG*.

*South Dakota:* The applicable statute of limitations is two years after the occurrence or discovery of the conduct which is the subject of the action. S.Dak.Cod.L. § 37–24–33. Defendants contend that even if tolled until April 1, 1981, as alleged by Plaintiffs this provision therefore bars all claims against *VWAG*.

*Tennessee:* The statute of limitations is one year after discovery but no more than four years after the date of the transaction. Tenn.Code Ann. § 47–18–110. Defendants contend that this provision bars all claims under the statute.

*Utah:* The applicable statute of limitations is two years from the date of violation. Utah Code Ann. § 13–11–19(8). Defendants contend that if tolled until April 1, 1981, as alleged by the Plaintiffs, this provision bars all claims under the statute against *VWAG*.

*Wisconsin:* The Wisconsin Deceptive Trade Practices Act, et seq. authorizes private actions only because of a violation of

any special and/or general regulation promulgated by the Department [of Agriculture, Trade and Consumer Protection]. Wisc.Stat. § 100.20(5). Plaintiffs did not allege a violation of any such order or regulation, and there are no general or special orders applicable to the case. Defendants thus assert that no claim asserted under the Act in this action is viable.

The Plaintiffs' counsel contend that the statutes of limitations were tolled by the alleged fraudulent concealment by Defendants through April 1, 1981, the time of the filing of the Federal Trade Commission complaint. The filing of this action on February 21, 1985 would therefore have been timely under any four-year limitation period. The pendency of *Abraham* as a proposed class action would further toll the limitations period between February 22, 1983 and February 21, 1985 under *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). That further tolling would render the Deadwyler filing timely under any two-year limitations period, at least as to Volkswagen of America. The Defendants contend that there were no *Abraham* tolling as to *VWAG* and that the "Little FTC Act" claims were time barred as to *VWAG* for ten states—two having three-year limitations periods (Alaska, South Dakota, New Hampshire, Ohio, Utah, Indiana, Kentucky and Idaho). The Defendants further contend that the "Little FTC Act" claims were time-barred as to both *VWAG* and *VWoA* for four states,—two having one-year limitations periods from date of purchase (Nebraska and Louisiana) and two having one-year limitations periods from date of discovery (Alabama and Tennessee).

■ Plaintiffs' counsel contend that because statutes of limitations have been deemed "procedural" issues to which the law of the forum applies, see *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849, 856–857 (1988); *Terry v. Pullman Trailmobile, Inc.*, 92 N.C.App. 687, 376 S.E.2d 47 (1989), all of these state law "Little FTC Act" claims are governed by the four-year limitations period of North Carolina General Statutes § 75–16.2. They further contend that the North Carolina borrowing statute, N.C.G.S. § 1–21, as amended in 1979, is inapplicable because this Court sitting as a North Carolina court, would have had "jurisdiction over the person under the provisions of G.S. 1–75.4,"—the North Carolina long-arm statute. Plaintiffs argue that this Court had long arm jurisdiction over the Defendants who were doing business in this state and that by virtue of several North Carolina resident class representative Plaintiffs this Court had long-arm jurisdiction over out-of-state class members under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Plaintiffs further contend that while the 1979 amendment excluding long-arm cases from the scope of N.C.G.S. § 1–21 was effective only for causes of action arising on or before January 1, 1980, due to the alleged fraudulent concealment by Defendants the cause of action is not deemed to have accrued until April 1, 1981 —the time of the FTC complaint, citing *Cowart v. Whitley*, 39 N.C.App. 662, 251 S.E.2d 627, 629 (1979), 54 C.J.S. Limitations of Actions § 87.

The Court need not and does not decide whether the Plaintiffs' four-year "law of the forum" limitations period theory presents a winning claim. In fact the Court doubts very much that the claim is the law but that is not the test in this inquiry.

■ In addition the Plaintiffs have advanced the legal theory that the Little FTC Act claims in states having shorter limitations periods were not barred. For each of these states the Plaintiffs have advanced legal theories why the claims were not time-barred. Ten of the 14 state limitations issues are invoked only as to Volkswagen, AG (VWAG), under two and three year limitations periods, on the assumption that the filing of the *Abraham* class action against Volkswagen of America, Inc. (VWoA) did not toll the limitations period against (VWAG), which was named as an *Abraham* defendant for only 163 days before Attorney Shoolman agreed to its voluntary dismissal. Since class certification was never reached or denied in *Abraham*,

the statute of limitations was tolled for absent class members during its pendency as to VWoA, and for the 163–day period as to VWAG. In addition the Plaintiffs contend that the pendency of the *Abraham* class action against VWoA also tolled the limitations period as to VWAG in its capacity as VWoA's alter ego. The Plaintiffs contend that VWoA is very close to being nothing more than a department of VWAG and a suit against VWoA is the same as a suit against VWAG, and that a judgment against VWoA would be enforceable against its alter ego even if VWAG had never been named as a defendant. Further, the Plaintiffs contend that even if VWAG had been named as a defendant only as to the 25 "Little FTC Act" states for which the Defendants raise no limitations challenges, VWAG would still have been fully in the case for discovery purposes and for defending all of the factual allegations as to both implied warranty and "Little FTC Act" claims. Again, while the Court doubts these contentions should prevail in Court they nevertheless are sufficient to withstand a Rule 11 sanctions motion.

Four states have a one-year statute of limitations. These states are Nebraska, Tennessee, Louisiana and Alabama. The Defendants have withdrawn their sanctions claim as to Nebraska.

Tennessee Code Ann. § 47–18–110 provides a one-year statute of limitations after discovery and four years after the date of the transaction while the statute in Louisiana prohibits an action being brought under the Act in a representative capacity by a person who has suffered a loss as a result of a violation of the Act and authorizes only the Attorney General or District Attorney to commence an action on behalf of a class, pursuant to La.Rev.Stat. § 51:1408. The statute of limitations is one year. The Plaintiffs' contention that the four-year North Carolina statute applies is without merit.

 The Plaintiffs concede that they made a mistake by including the State of Alabama since the "Little FTC Act" was not enacted until 1981, long after the last

of the "Rabbits" "were sold by the Defendants in 1979." They contend this was an innocent mistake which was brought about by the statute being contained in a volume titled "Code of Alabama 1975." The statute does not contain any specific effective date provision, and Plaintiffs mistakenly miscited it as 1975 in the amended complaint. Rule 11 "does not extend to factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact.' " *Forrest Creek Assocs. Ltd. v. McLean Savings & Loan Ass'n*, 831 F.2d 1238, 1245 (4th Cir.1987). For this reason, and the fact that apparently counsel for the Defendants made the same error and did not discover it for sometime, the Plaintiffs' good faith but mistaken inclusion of Alabama is not sanctionable.

 In view of the existence of a body of law suggesting that there exists an express or implied right of action for damages under every "Little FTC Act," the Plaintiffs' counsel would not be subject to sanctions for asserting such actions. See *Sheldon Treatise Unfair and Deceptive Trade Practice*, § 7.2.3 (1988 & 1989 Supp.) While the Court is not convinced that implied private causes of action exists under the North Dakota and Nebraska statutes, or any other statute which limits by express language the actions to the Attorney General or District Attorney the claim that such actions would be implied is not sanctionable. The trial court should have dismissed the claims long before the trial. The same logic and reasoning would apply to the "demand letter" requirement of the Massachusetts statute. The demand letters written by Attorney Shoolman in October 1984 are a poor excuse for any kind of a demand letter or notice. Nevertheless, the claim that such letters and the complaint in *Abraham* were sufficient to constitute notice under the Massachusetts statute would not be sanctionable. Rule 11 was never intended to put attorneys in legal strait jackets. The Rule does not require that counsel advance winning causes of action or claims, but only that a questionable theory of law be "warranted by existing law" or make a "good faith

argument for the extension, modification, or reversal of existing law." While many of these claims are without merit and should have been dismissed by the trial judge but they were not "legally frivolous and clearly foreclosed by authoritative precedent" and are not sanctionable.

### Claim No. 2

### Judge Shopping Claim

■ There is no dispute that the Plaintiffs had the right to institute the original action in the Western District of New York and that they exercised this right and brought the *Abraham* action in February 1983. Since Judge Telesca was the only judge sitting in the Rochester Division of the Western District its assignment to him was thus guaranteed. The Defendants do contend that after two years in Judge Telesca's court and after some adverse rulings and while the rulings were on appeal to the Court of Appeals for the Second Circuit it was impermissible "judge shopping" to file this action in this district. They further contend that since no plaintiff or attorney for the Plaintiffs resided in the Statesville Division of this district this action was filed solely for the purpose of avoiding the adverse rulings of Judge Telesca and to get the case into the court of a very favorable judge. They contend that this conduct was improper and is in violation of Rule 11 and 28 U.S.C.A. Section 1927 in that it caused unnecessary delay or needless increase in the costs of litigation.

The Plaintiffs contend that the *Abraham* and *Deadwyler* cases are not the same; that the legal theories, the named Plaintiffs and the attorneys were different and that Deadwyler was therefore properly filed in this district. The Plaintiffs claim that Deadwyler was a "new" action because it did not include either the lost *Abraham* written warranty claims or the lost *Abraham* implied warranty claims barred by New York and other states' privity doctrines, and "new" because it added over 100 new plaintiffs whose claims were not subject to these infirmities. In addition, the Deadwyler pendent "Little FTC Act" claims excluded New York, whose statu-

tory private cause of action was not effective until 1980, after all the Rabbits had been manufactured and sold.

In order to rule on this phase of the motion for sanctions the Court must determine whether *Abraham* and *Deadwyler* are in fact the same litigation.

On September 10, 1984, Judge Telesca dismissed the *Abraham* case for lack of jurisdiction, first, as a potential class action and then as an individual action. In a finding subsequently upheld on appeal, Judge Telesca held that plaintiffs who could not plead a legally viable claim under the governing law could not be counted toward the 100 named plaintiffs required for federal class action jurisdiction under Section 110 of the Magnuson–Moss Act, 15 U.S.C.A. Section 2310. *Abraham v. Volkswagen of America, Inc.*, 103 F.R.D. 358 (W.D.N.Y.1984), *aff'd in relevant part*, 795 F.2d 238 (2nd Cir.1986). Since only seventy-five plaintiffs survived this threshold test, Judge Telesca found that class action jurisdiction, i.e., the power to consider class certification, was lacking.

In the absence of threshold class action jurisdiction, Judge Telesca also examined the complaint before him in light of the Magnuson–Moss Act criteria for federal subject matter jurisdiction of a multi-plaintiff individual action. These requirements were also found lacking.

In the initial complaint filed in *Abraham* plaintiffs' counsel failed to specify any single classwide defect but instead alleged multiple alternative overlapping shortcomings in design, material and construction of the "oil systems" of the vehicles in suit, complaining basically about the vehicles' performance. Judge Telesca declined joinder of the remaining seventy-five plaintiffs with arguably viable causes of action. From the record before him the judge found that the individual driving and maintenance histories are vitally important to proving or disproving each claim. *Abraham, supra*, 103 F.R.D. at 364. This refusal of joinder precluded aggregation of the remaining individual claims so as to meet the $50,000.00 amount in controversy requirement for federal jurisdiction of a

non-class action under the Magnuson–Moss Act.

Plaintiffs' counsel have conceded that there were at least nine *Abraham* plaintiffs with viable written warranty claims who resided or had purchased their vehicles in the Western District of New York. Therefore, the Western District of New York remained a proper venue for *Abraham* as a potential class action if sufficient plaintiffs were available to meet the requirements of the Magnuson–Moss Act.

Within ten days of the dismissal in *Abraham*, Plaintiffs' counsel sought intervention, as plaintiffs of thirty-eight individuals. Counsel represented to the Court that these thirty-eight fully met the court's criteria for being counted toward the 100 plaintiff class action jurisdictional requirement in the Magnuson–Moss Act. Counsel further stated that the proposed intervenors, added to the seventy-five plaintiffs surviving Defendants' initial motion, would once again raise the number of named plaintiffs well above the required one hundred. Had this intervention been maintained, thus satisfying the criteria for class action jurisdiction, plaintiffs' pending motion for certification would have emerged as the next item of business in the case before Judge Telesca. The extensive further proceedings in *Abraham* including the reconsideration of Judge Telesca's decision and the appeal to the Second Circuit, would have been obviated.

In addition to intervention, Plaintiffs' counsel also moved to amend the complaint, in their own words, "to narrow it to the single defect: defective valve stem seals causing excessive oil consumption."

Despite the fact that the Defendants did not file a formal opposition to Plaintiffs' counsels' request for intervention and before the Court ruled on the motion, Plaintiffs' counsel filed a superseding application for amendment which abandoned the requested intervention and merely narrowed their defect allegations as to the single valve stem failure and sought reconsideration of the joinder/commonality determination on that basis.

On reargument, while Deadwyler was getting under way, Judge Telesca adhered to his refusal of joinder. This second dismissal was appealed. The refusal of joinder as to the "single valve stem seal defect" theory was reversed. The Second Circuit found that, by alleging valve stem seals as the sole "classwide defect," counsel had finally sufficiently alleged at least for pleading purposes, "a logically related series of transactions" so as to achieve threshold Rule 20 commonality for Magnuson–Moss jurisdictional purposes. *Abraham v. Volkswagen*, 795 F.2d 238, 241, 251 (2nd Cir.1986).

By abandoning the proposed intervention of sufficient plaintiffs to constitute the required one hundred plaintiffs counsel made consideration of their motion for certification in *Abraham* impossible. Their reasons for deciding to avoid further proceedings in Judge Telesca's court and their plan to shift the action to a more favorably disposed judge were admitted both on and off the record. Under date of January 14, 1985, just over one month prior to the filing of Deadwyler, attorney Shoolman wrote to the plaintiffs in *Abraham* as follows:

> In our case, Judge Telesca recently decided that even our 119 class representatives weren't enough to meet Congress' requirement of 100 class representatives. We're asking him to reconsider and, if he doesn't change, we'll appeal. To speed things, we're about to add even more people and may move the case to a judge less likely to delay the case, with distracting procedural requirements.

(D.E. 627, Gsovski Affidavit in Support, Exh. B). As admitted in the letter, the destination to which counsel was planning to "move the case" was not a court, a district, a state, or a jurisdiction, but "a judge" whose anticipated rulings would meet their specified criteria.

At the time of the initial dismissal ruling in *Abraham*, over 100 persons available as named plaintiffs in the action met the class action jurisdictional criteria applied by Judge Telesca. At least seventy of these plaintiffs and proposed intervenors lived

outside of the State of New York, the most heavily represented states being Pennsylvania and Maryland. If the only strategy was to get away from Judge Telesca several appropriate states were available at the time of the initial dismissal but North Carolina was not one of them. There was not a single North Carolinian among the original *Abraham* plaintiffs or the additional proposed intervenors. Five months later when the Deadwyler case was filed, there were 30 such individuals, including seven from the Western District but not a single one from the Statesville Division. The Court takes note that none of the attorneys were from North Carolina except Attorney Brown who has an office in the Middle District of the State. In short there was no possible reason for the selection of the Statesville Division except the judge who had been assigned to try all civil cases for that division, Judge McMillan. By filing the case in Statesville the plaintiffs' counsel knew it would be automatically assigned to Judge McMillan. It is interesting that of the 30 North Carolinians joining as plaintiffs in this action 17 of them were from Attorney Brown's home district and that the trial of the case took place in Charlotte some forty miles south of Statesville even further away from Attorney Brown's home district and office.

The Court finds and concludes from the evidence, and by its greater weight, that Plaintiffs' counsel did in fact engage in "judge shopping" and filed this action in the Statesville Division of this Court solely for the purpose of having it assigned to Judge McMillan for trial.

The Court must next determine whether the Deadwyler case is in effect the *Abraham* case which had been proceeding in the Western District of New York, and the Court of Appeals for the Second Circuit for two years. From a practical point of view the Court is convinced from the evidence that the Deadwyler and the *Abraham* cases were in effect the same case, but from a technical point of view and for Rule 11 and Section 1927 purposes the Court must hold that they were separate cases. Deadwyler was new and different in that it did not include either the lost *Abraham*

written warranty claims or the lost *Abraham* implied warranty claims barred by New York and other states' privity doctrines. In addition a sizeable number of Plaintiffs appeared in Deadwyler who had not been in *Abraham*, although thirty-eight of them for a brief time sought intervention in *Abraham* and later thirty-two of the Plaintiffs in *Abraham* were named as Plaintiffs in Deadwyler. None of the original Deadwyler Plaintiffs resided in or purchased their Rabbits in the State of New York, and the Deadwyler pendent "Little FTC Act" claims excluded New York, whose statutory private cause of action was not effective until 1980, after all of the alleged defective Rabbits had been manufactured and sold.

The Court concludes that the Defendants have not met their burden of proof that Plaintiffs' counsel violated either Rule 11 or Section 1927 when they instituted Deadwyler in this district.

### Claim Nos. 3 and 4

■ The third and fourth acts of counsel alleged as the basis for sanctions will be treated together as they are closely related. *Act three asserts that there was at no time during this litigation a class representative to direct, supervise or guide, or who was reasonably informed of counsel's actions in conducting this litigation and the fourth act was that counsel conducted active settlement negotiations in 1986 without specific authority from any plaintiff class representative for any demand made on behalf of any individual plaintiff or the class, and without informing named plaintiffs of the substance of any specific offers made by the defense.*

These two aspects of the conduct of this case challenged here appear to involve only Attorney Shoolman as he is the only one of Plaintiffs' counsel with direct client contact and therefore the only one with client contact responsibilities. In fact Mr. Shoolman in his letter to Judge McMillan dated September 21, 1987 seems to indicate that all other counsel appearing for the Plaintiffs in Deadwyler are mere local counsel and he

was running the show. His statement to the Judge that: "I'll need your help to be heard above the disharmony in this case. My previous efforts to minimize disharmony by allowing local counsel great latitude in presenting the case have failed; justice to the class requires that I be heard on Monday." This statement was proceeded by a recitation of his work on the case and his success on other class actions. See Exhibit D attached to the Defendants' motion for sanctions and affidavit of Attorney Gsovski.

During the spring of 1986, settlement discussions were actively pursued between the parties. Intense negotiations involving the exchange of specific proposals, offers and demands commenced with a defense proposal delivered on February 24, 1986 and confirmed in writing by Plaintiffs' counsel, who described it as providing "a framework in which further discussions may prove fruitful." (D.E. 661, Exh. E at 2). That proposal and all subsequent offers by the defense were made to the nationwide class which the district court had tentatively certified at Plaintiffs' behest. Exchanges on the subject of settlement continued through and ceased as of April 29, 1986. (D.E. 627—Gsovski Affidavit in Support § 2).

From the first, these offers included guaranteed payments of 100% of documented relevant expenses incurred at up to 50,-000 miles and 50% of such expenses at mileages of up to 75,000, with Better Business Bureau arbitration of disputed claims. (D.E. 661, Exh. E). In this respect, all of the Defendants' settlement offers exceeded the reimbursement, confined to arbitration alone, which was guaranteed in a consent decree with the Federal Trade Commission concerning matters involved in this litigation. See, 52 Fed.Reg. 17960 (proposed consent decree, May 13, 1987). The Court finds and concludes that these offers were not trivial or *de minimis*. The Court further finds that there is no indication that the Defendants did not intend to honor the offers, if accepted.

The evidence discloses that during the time of these settlement discussions from February 24, 1986, when the defense first made a concrete proposal through April 29, 1986, when all offers were withdrawn, Attorney Shoolman did not communicate the terms of any proposal made by the Defendants to the named plaintiffs. In addition, Attorney Shoolman has stated under oath that he never received authority or instructions from any plaintiff in this case with respect to those settlement discussions. (D.E. 627, Gsovski Affidavit in Support, Exh. C). At least two of the named plaintiffs did not know their names had been used as plaintiffs until their depositions were taken. Attorney Shoolman has sought to argue in favor of relieving named plaintiffs from a judgment for attorney fees because those named plaintiffs did not know the nature or potential consequences of the claims asserted on their behalf and believed that they had avoided all financial responsibility by virtue of the terms of their retainer agreements with him. (D.E. 649, 650, 651).

Neither Attorney Shoolman nor other counsel have submitted any evidence that there was a named plaintiff informed about the progress of the litigation, making decisions typically made by clients, directing the course of the litigation, and instructing counsel on settlement.

In a class action in federal court, the named class representative plaintiffs have significant responsibilities to the class they represent. The integrity of the class action device itself further requires that the named class representatives be something more than the unwitting pawns of their counsel. The same policies which obligate the representatives to be the real parties in interest obligate their lawyers to keep the named plaintiffs sufficiently informed and advised to discharge that important obligation faithfully and adequately.

As a court-appointed "fiduciary's fiduciary," class counsel assumes a particularly heavy responsibility even beyond that owed by a lawyer to an individual client:

> One accepting employment as counsel in a class action does not become a class representative through simple operation of the private enterprise system. Rath-

er, both the class determination and designation of counsel as class representative come through judicial determinations, and the attorney so benefitted serves in something of a position of public trust. Consequently, he shares with the court the burden of protecting the class action device against public apprehensions that it encourages strike suits and excessive attorneys' fees.

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir.), *cert. denied*, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973). See also *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986).

Attorney Shoolman has failed to adduce any substantial evidence to controvert his own sworn admission that he did not keep his clients advised as to significant settlement prospects in this action and now admits that his clients were never meaningfully aware of the claims being pleaded in this case or of the possible consequences should the case be lost. In fact in the efforts to solicit the Plaintiffs to join in the case they were told there would be no risks or obligations. Such conduct is a fundamental assault on the integrity of the class action litigation process in federal court. In this case the assault is compounded by the failure to advise clients of substantial settlement offers or to secure their authority for the positions being taken in response thereto. Two of the statutory requirements of 28 U.S.C.A. Section 1927, multiplication of proceedings and excess costs, expenses and attorney fees, are self-evidently present in this case. Therefore, if Defendants are correct in their contention that an attorney failing to communicate substantial offers of settlement acts "unreasonably and vexatiously" under 28 U.S.C.A. Section 1927, the statute is clearly applicable. However, the precise standard to apply is not critical where the conduct at issue meets even the strictest requirements. That is the case here. No type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in "bad faith," than

the failure to communicate offers of settlement.

In the malpractice field, failure to communicate settlement offers is among the few types of misconduct of such a self-evident nature that expert testimony is not required to establish its improper character. E.g., *Rizzo v. Haines*, 555 A.2d 58, 66–67, 520 Pa. 484 (1989). In criminal cases, most courts have held that a plea offer which is not communicated to defendant by his counsel deprives the former of the effective assistance of counsel, and in the disciplinary field, failure to communicate settlement offers is ground for disbarment. E.g., *Sands v. State Bar*, 49 Cal.3d 919, 264 Cal.Rptr. 354, 782 P.2d 595 (1989).

The absolute obligation to communicate, effectively and accurately, the terms of any offer of settlement for the client's decision is a duty which a lawyer owes to his adversaries and the court as well as his clients. Breach of this obligation should be viewed as "a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly." See *Warner Brothers, Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2nd Cir. 1989). In fact, much less egregious conduct interfering with settlement—mere foot-dragging in formally consummating an agreement—has been sanctioned under the "bad faith" reading of 28 U.S.C.A. Section 1927. E.g. *Forman v. Mt. Sinai Medical Center*, 128 F.R.D. 591, 605–06 (S.D.N.Y.1989).

The Court is aware of the difficulty in communicating with class members in an action such as this case, but the procedure for such a task is set forth in the Rule and has been detailed by numerous court decisions. Attorney Shoolman certified to the Court that he could and would represent the class and that he was well qualified for the task. In fact he not only listed his qualifications but cited instances of his accomplishments and success in the class action field. See letter to Judge McMillan dated September 21, 1987, Exh. D.

The admitted failure to transmit settlement offers, the admission that none of the Plaintiffs had ever extended or defined any

authority to settle the case and the flagrant misrepresentations on the basis of which the individuals were induced to participate in the action lend credence to the often heard charge from critics of the class action device that the real parties in interest on the plaintiffs' side are the lawyers rather than their prospective clients. The Court feels compelled to impose sanctions for this conduct in order to protect the integrity of the judicial process and the class action device.

### Claim No. 5

■ *The fifth claim is based upon the contents of the amended complaint and the conduct of counsel for Plaintiffs since the jury verdict.* It is clear from the filing of the amended complaint and throughout the trial Plaintiffs' counsel alleged and sought to prove that the polyacrylate valve stem seals used in the Rabbits were defective. The purported classwide defect issue was necessary both to procure class certification and to avoid the bar of the statute of limitations.

The complaint signed by Attorneys Moore, Brown and Shoolman, contains specific allegations focusing on defective polyacrylate valve stem seals. The motion for class certification, signed by the same counsel, relies extensively on the proposition that the class vehicles were equipped with the same allegedly defective part.

After trial by jury resulted in a finding against the Plaintiffs, counsel changed course completely. Before Judge McMillan on motion for a new trial, before the Court of Appeals for the Fourth Circuit on appeal, and before the Supreme Court of the United States on petition for certiorari, Plaintiffs' counsel argued strenuously and at length that the issue of defective valve stem seals was "legally irrelevant." As soon as Plaintiffs' counsel took this position in argument before Judge McMillan for a new trial counsel for the Defendants warned of its potential implications as a basis for sanctions. (E.g., D.E. 591).

The key paragraph of the amended complaint reads in relevant part as follows:

22. The identical valve stem seals with which all 1976–1979 Rabbits were equipped were defective in that, due to the interaction of their inferior polyacrylate elastomer material with the relatively high heat conditions uniformly generated by the Rabbit engines, the seals tended to gradually and prematurely harden, crack and deteriorate, typically at mileages of 20,000 to 40,000, thereby permitting excessive amounts of engine oil to leak into the combustion chamber and be burned with the gasoline, ... [T]his excessive oil consumption and consequent engine damage was proximately caused by the defective valve stem seals ... By virtue of the excessive oil consumption and consequent engine damage caused by the defective valve stem seals, all 1976–1979 Rabbits owned by Plaintiffs and class members were unfit for the ordinary purposes for which engine oil systems are used in automobiles. (D.E. 7, § 22).

Putative class vehicles were expressly confined to those equipped with the allegedly defective valve stem seal. *Id.* § 5. Since the verdict of the jury counsel for the Plaintiffs have consistently contended this allegation of the complaint was "legally irrelevant" and continue to advance this claim even in these motion hearings. The record, however, establishes that counsel for the Plaintiffs structured this entire action around that single defect issue, and continued to maintain the validity of that approach in the face of repeated defense challenges based, *inter alia*, on the very fact that, with few exceptions, valve stem seals or any other specific alleged "defects" are indeed "legally irrelevant" to any individual's right to recover.

On November 26, 1985, counsel for Plaintiffs moved for class certification, and specifically stated that "to prevail at trial Plaintiffs will basically need to establish ... that ... the valve stem seals were defective ..." (D.E. 82b at 3). The following statements appearing in the brief in support of the motion of certification establish without question the indispensable role the alleged valve stem seals defect played in the certification and the lawsuit.

Plaintiffs' class action against *VW* for defective valve stem seals is uniquely suited for class action treatment under the [Magnuson–Moss] Act. Class members bought one type of automobile from one manufacturer and allege one common causative defect. Issues of defective design are most appropriately tried on a classwide basis. *Id.* at 2.

The issues to be presented to the jury are few, simple and direct:

(1) Were the VW Rabbits subject to an unacceptably high rate of excessive oil consumption and consequent engine damage caused by defective valve stem seals made of an inferior material, rendering those Rabbits unfit for the ordinary purposes for which cars are used? *Id.* at 6.

 \* \* \* \* \* \*

... the common issues in this case, and in particular the central issue of VW's defective valve stem seals, predominate and amply support class certification. *Id.* at 12.

 \* \* \* \* \* \*

In this case, there are two overwhelmingly predominant common class I merchantability issues—(1) whether there was a defect in all of the 1975–1979 Rabbits (i.e., the valve stem seals) and (2) whether this defect produces a high rate of excessive oil consumption and consequent engine damage. *Id.* at 14.

 \* \* \* \* \* \*

(2) Classwide Proof of a Common Defect. The defect involved in this case is as simple as it is common to all of the Rabbits in the class, as described in § 22 of the amended complaint, p. 16.

No significant management difficulties are expected in this lawsuit. For example, proof as to the defective nature of the earlier [polyacrylate] elastomer valve seals will not vary from class member to class member, from year to year, or even from model to model, since only one car model is involved and the seals were the same in all of the subject cars. *Id.* at 42.

Class certification was granted in early 1986. The three classes certified were expressly restricted to vehicles "equipped with polyacrylate valve stem seals." (D.E. 240, 366). The notice sent to the class described this litigation in language proposed by Plaintiffs' counsel on four separate occasions, (D.E. 263, 275, 309, 359), as follows:

The Plaintiffs in this lawsuit allege that some 400,000 gasoline powered 1976–1979 model year VW Rabbits (i.e., those manufactured between July 5, 1975 and April, 1979) ... were equipped with defective "valve stem oil seals." ... The Plaintiffs claim that this "valve stem oil seal" defect breaches VW's "implied warranty of merchantability" ... (D.E. 367 at 2).

The Defendants challenged that certification in an application for mandamus, *In re Volkswagen*, No. 86–2550 [803 F.2d 714 (4th Cir.1986) (table) ]. Defendants argued that counsels' proposed classwide valve stem seal defect issue could not obviate or avoid individual issues—including causation in fact, alleged fraudulent concealment, and damages—which would overwhelmingly predominate as to the resolution of each claim in suit. Plaintiffs' counsel responded, *inter alia*, that only damages found to have been caused by defective valve stem seals were involved in this case:

Clearly, to the extent that any claimants attempts to recover damages for some other failed engine part unrelated to the defective valve stem seals, that claim can be easily identified and excluded. Plaintiffs' Surreply in Opposition to Petition for Mandamus, *In re Volkswagen*, No. 86–2550 (U.S.Ct. of Appeals, 4th Cir.) at 8.

 \* \* \* \* \* \*

... VW's right to challenge those few claimants, if any, for which it can devise some credible theory as to some causation other than defective valve stem seals would be fully preserved for presentation before a second jury. *Id* at 9.

The decision of the Court of Appeals for the Fourth Circuit affirming the defense verdict in this case is *res judicata* that counsel never offered any valid "objection" to trying the case on the issue of defective

valve stem seals. In fact, Plaintiffs' counsel drafted the critical jury interrogatory on the issue of defective valve stem seals. Judge McMillan fully adopted the "substance and structure" of this as well as virtually all of Plaintiffs' counsels' proposals. *Deadwyler v. Volkswagen*, 884 F.2d 779, 782–83 (4th Cir.1989).

Throughout the trial counsel for the plaintiffs steadfastly maintained that allegedly defective valve stem seals remained the "central part of the class case," no matter what collateral evidence on other aspects of the vehicles in suit was presented. Counsel further acquiesced in categorical instructions to the jury, delivered both in mid-trial and as a part of the final charge, making this point clear to the jury in every possible way.

During the trial Plaintiffs' counsel made a major proffer of evidence concerning oil warning lights, dipsticks, oil filters, oil pans, and other components of the oil system of the subject vehicles. The Defendants objected contending that its admission would impermissibly expand the class issues beyond the valve stem seal. Attorney Moore responded for the Plaintiffs:

> If I may say, the seals are still the central part of the class case. If it weren't for the seals, we would not be going, and we are not going out and asking for a separate dip stick class or separate oil pan class. The seals are a but for, to all of these subsidiary aspects of the oil system. The class doesn't change, it doesn't get bigger, it doesn't get smaller, it remains exactly the same. It is just that these ancillary aspects of the system help explain better why so much damage was done by the defective seals. Tr. 976.

Based upon this statement Judge McMillan allowed the evidence but gave a limited instruction to the jury as set forth in the argument of Attorney Moore. Judge McMillan also repeated the limited instruction in his formal charge at the close of the case. Tr. 2494. Plaintiffs' counsel did not object at either time.

Plaintiffs' counsel thus sought, achieved and successfully defended class certification all the way through trial on the basis of an "overwhelmingly predominant class-wide merchantability issue," defectively designed valve stem seals. In addition, their "valve stem seal" theory was essential to their efforts to avoid a time-bar affecting each individual plaintiff's claim in this action. The statute of limitations played a vital role in this case. There is no dispute that absent tolling of some sort, the implied warranty claims of each and every named plaintiff and virtually the entire class in this case are time-barred by § 2–725 of the Uniform Commercial Code, under which a cause of action for breach of implied warranty expires four years after tender of delivery, in most states, "regardless of the aggrieved purchaser's lack of knowledge of the breach."

During discovery and before trial the Defendants on two separate occasions moved for summary judgment against each and every named plaintiff based on the statute of limitations. At each of these two critical times, separated by nearly a year, Plaintiffs' counsel avoided summary judgment by claiming that tolling persisted until the disclosure, not merely of any vehicle's unmerchantability, but "of the defective valve stem seals that are the focus of this litigation." (D.E. 335 at 2).

For example, based upon straightforward and unambiguous testimony that they regarded their vehicle's problems as Volkswagen's fault alone and never believed any contrary statements by VW or one of its dealers to the contrary, Volkswagen moved for summary judgment as to several named plaintiffs whose depositions had been permitted. (D.E. 247, 251–262). In so doing as to Plaintiff Harold Harris, the defense counsel specifically argued as follows:

> In any event, there was absolutely no concealment of Mr. Harris' "cause of action." No one denied that Mr. Harris' car had broken down, and no one denied that Volkswagen had manufactured and warranted the vehicle. Nothing else is required in order to establish the elements of a warranty cause of action. (D.E. 247 at 5–6).

Plaintiffs' counsel responded as follows:

> ... [I]t is one thing for a plaintiff car owner to believe that a premature engine

failure was not his fault, and quite another matter for him to discover that he has a cause of action against VW for defective valve stem seals.

\* \* \* \* \* \*

[W]hether and when these Plaintiffs "believed" that the problem was not their fault is irrelevant to whether they exercised due diligence in learning that a specific mechanical defect—defective valve stem seals—gave them a cause of action against VW. (D.E. 272 at 7, 8–9).

In resisting the second across the board summary judgment motions filed by the Defendants as to each plaintiff based on the statute of limitations, Plaintiffs' counsel procured and filed 142 identically worded affidavits from the named Plaintiffs. (D.E. 335, 338, 340). These affidavits constituted the only material evidence offered in opposition to these motions. The full text of each affidavit reads as follows:

I did not know—after exercising all due diligence—that the oil consumption and/or related engine damage problem experienced with my Volkswagen Rabbit was caused by defective valve stem seals until sometime after February 22, 1979.

At trial, valve stem seals remained critical to Plaintiffs' counsels' theory of fraudulent concealment. Jury issue No. 7, proposed by Plaintiffs' counsel and adopted by Judge McMillan reads as follows:

7. If issues one and two (valve stem seal defect and unmerchantability) are answered "yes," was there any widely available information from which the members of Plaintiffs' class should have learned of the defectively designed valve stem seals in the gasoline Rabbit automobiles prior to:

(a) February 21, 1979? ANSWER: _____

(b) February 21, 1980? ANSWER: _____

(c) February 21, 1981? ANSWER: _____

The above-quoted statements of Plaintiffs' counsel, the affidavits from the 142 named Plaintiffs and the fraudulent concealment jury issue prepared by counsel and adopted by Judge McMillan illustrate the pivotal nature of their valve stem seal defect claims to their fraudulent concealment allegations and thus to the substantive viability of any individual claims in this action.

Plaintiffs' counsel contend that this contention is incomprehensible to them and is, in fact, without merit and perhaps sanctionable. It appears to the Court that Plaintiffs' counsel are either misreading the Defendants' contention on this point or trying to ignore the issue. The Court construes the claim to be that counsel for the Plaintiffs have now admitted on the record in this case, both in this proceeding and in the motion for a new trial, the appeal to the Court of Appeals and in the petition for certiorari to the Supreme Court that the theory of the case advanced in the pleadings, class certification and at trial that specific proof relating to an alleged defect in valve stem seals is "legally irrelevant" to their count I implied warranty claims. They make this contention notwithstanding the fact that they brought the class action, obtained class certification, and tried the case on the theory that the alleged defective valve stem seals was the overwhelmingly predominant classwide merchantability issue. That they used the issue to not only obtain class certification but to toll the statute of limitations and defeat summary judgment on two occasions. In short the Defendants are contending that Plaintiffs' counsel have now admitted, in effect, to bad faith conduct and to playing "fast and loose" with the court system.

The Court is inclined to agree that the alleged defect in valve stem seals was "legally irrelevant" to the Plaintiffs' count I implied warranty claims. Despite persuasive major variations in other aspects of the application and provisions of the Uniform Commercial Code among the states, see *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271–75 (D.D.C.1990), most states do not require a claimant to plead and prove a particular "defect" as a precondition to recovery for breach of the implied warranty of merchantability. In most states a claimant may recover in total ignorance of the specific defect or defects which rendered

the product he bought unmerchantable in his hands. The Court of Appeals for the Fourth Circuit has summarized this rule as follows:

> [A]s to warranty claims, the similarity of defects [among individual plaintiffs] is irrelevant; each claimant need only demonstrate what warranties were made and the extent to which the products differed therefrom.

*Saval v. BL, Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983).

Obvious problems arise, however, when such amorphous claims are sought to be aggregated for joinder, even under the extremely lenient commonality standards of Rule 20, F.R.Civ.P.; as *Saval* itself exemplifies when class certification is at issue under such a theory, those problems become even greater. The necessary predominance of common factual questions across the class required under Rule 23(b)(3) cannot exist, except possibly in those instances where there can be only one classwide cause of the problem in suit.

The case at bar is not such a case. It has never been disputed that excessive usage of oil by an engine can have many different and potentially overlapping causes, even in a single engine. (D.E. 280 at 34, Exh. 9). Such a situation is fatal to class certification. See generally, *Walsh v. Ford Motor Co., supra,* 130 F.R.D. at 270–71.

Therefore, Plaintiffs' counsel fastened upon allegedly "defective valve stem seals as the overwhelmingly predominant classwide merchantability issue" as the basis upon which to achieve certification. They did so, however, while knowing by their own admission, this claim to be a "legally irrelevant" basis for their claims.

By alleging that this case could properly be pleaded, certified and tried on the "overwhelming issue" of the "defective valve stem seals" Plaintiffs' counsel laid the basis for the only contention which they ever made with respect to the statute of limitations—that Defendants' alleged fraudulent concealment of "the defective valve stem seals which was the focus of this case" tolled the statute of limitations which oth-

erwise barred this case. As the record shows Plaintiffs' counsel embraced this theory throughout this lawsuit.

A defendant's alleged acts of fraudulent concealment, whatever those acts may be, must in fact conceal from a plaintiff the facts needed to file suit. E.g. *Olson v. A.H. Robbins Co.,* 696 P.2d 1294, 1299 (Wyo.1985). However, without the alleged "valve stem seal defect" concealment of a fact needed to institute suit is impossible. Each plaintiff and class member knew of his own experience of oil consumption or engine failure. A dealer's denial that the vehicle is defective does not conceal any fact. The same is true of engine failure. Any plaintiff whose vehicle suffered engine damage due to lack of oil was obviously aware of the fact of engine damage even before the Defendants, and every named plaintiff deposed in this case testified to that effect. Accordingly, concealment of something had to be alleged to survive threshold challenge under the statute of limitations. The "valve stem seal defect" claim was thus tactically vital to the substantive viability of this action in the face of the classwide time bar which it faced.

In addition, the statute of limitations has potentially dispositive jurisdictional significance in this case. Time barred claims may not be counted toward the required 100 named plaintiffs' prerequisite to federal class action under the Magnuson–Moss Act. E.g., *Walsh v. Ford Motor Co.,* 588 F.Supp. 1513, 1521–24 (D.D.C.1984). Thus overcoming the statute of limitations is indispensable not only to prevailing on the merits but even to establish subject matter jurisdiction for a class action here. Furthermore, if insufficient individual claims are available to total the necessary $50,000, non-class jurisdiction in the federal district court is unavailable.

Plaintiffs' counsel endeavor, in opposition to this motion, to claim that valve stem seals, though significant to their case as it developed, were nothing more than an optional matter of "evidence" relevant if at all solely as embellishment of a general merchantability theory dealing only with those vehicles which did actually experi-

ence excessive oil consumption or lubrication failure. This claim cannot be squared in any way with the history of this case, particularly in light of Judge Telesca's unappealed determination in *Abraham* that warranty claims without a common defect cannot even meet joinder standards, 103 F.R.D. 358, accord *Walsh v. Ford Motor Co.*, 130 F.R.D. 514, 515 n. 2 (D.D.C.1990). Plaintiffs' counsel cannot credibly claim that the single issue on which they pleaded, certified and tried this case, dictating its substance and structure at every relevant turn was a minor irrelevance or a slip of the pen. The "defective valve stem seal" allegation was exactly what Plaintiffs' counsel repeatedly contended it was prior to the jury's verdict—"the focus of this litigation," the "overwhelmingly predominant" merchantability issue in the case, the "central part of the class case," the "but for," the key fact allegedly fraudulently concealed in order to toll the statute of limitations, the only basis upon which any damages were sought, and the specific and indispensable requirement for any individual membership in the classes certified in this case.

The Defendants therefore contend that since this claim was as Plaintiffs' counsel now admits "legally irrelevant" to anyone's recovery under the governing law, there was never a proper legal foundation for this litigation. They contend that the pivotal claim on which this entire action rested was invalid, and counsel knew it long before this action was filed, and thus the action was not well grounded in law and Plaintiffs' counsel are subject to sanctions.

Plaintiffs' counsel contend that the Defendants have confused entirely distinct legal and factual concepts. They say they have never suggested that evidence of defective valve stem seals was not a major part of their case, but have merely stated a plausibly correct legal proposition; that, even if the jury did not believe the evidence that defective valve stem seals were the specific cause of the Rabbits' excessive use of oil, the jury could still have found for Plaintiffs, on a classwide basis, as to the Rabbits' "unfitness" and fraudulent concealment, solely on the basis of statistical evidence that the Rabbits suffered a rate of oil consumption in excess of other manufacturers' cars. They further contend that if this were indeed "'a legally frivolous' position, presumably the Fourth Circuit would have *sua sponte* sanctioned plaintiffs for taking exactly this position in the previous appeal. The Fourth Circuit's decision gives no hint of any inclination to do so." They further contend that they have "made a more than colorable showing that statistical failure rate evidence along, with no evidence of any particular causative defect, could have sustained both class certification and fraudulent concealment, (D.E. 666), and that statistical evidence has been the primary basis for class certification in other Magnuson–Moss class actions. See *Skelton v. General Motors Corp.*, 1985–2 Trade Cas. (CCH) § 66.683 at 63, 215–63, 216 [1985 WL 1860] (N.D.Ill.)."

This case presents the most unusual situation this Court has ever encountered in more than half of a century at the bar and nearly a quarter of a century on the Bench. Plaintiffs' counsel alleged in their original complaint what they now say was the proper cause of action but when they encountered problems with class certification and the statute of limitations they moved heaven and earth to amend to allege a specific defect, then tried the case on that theory preparing the wording of the issues and instructions to the jury and upon an adverse verdict contending it was all "legally irrelevant" and again moved heaven and earth in an effort to gain a new trial. The Defendants' counsel after having won the big fight before the jury and warded off every move on appeal now urge this Court to find the legal gymnastics engaged in by Plaintiffs' counsel to be sanctionable and assess costs and counsel fees. While there is some temptation to do just that the Court must first determine whether the conduct of counsel is in violation of Rule 11 or Section 1927.

There was nothing wrong with the motion to amend the original complaint to allege a specific defect and its concealment in an effort to meet the requirements of the Rules for class certifications and to get

around the statutes of limitations so long as proper investigation of the law and the facts was made before the motion was filed. The Court must conclude that since the trial court allowed the motion, certified the class and permitted the case to go to the jury on the specific issue raised in the amendment that the amended complaint was therefore not "legally frivolous" or without proper legal foundation. This conclusion is further supported by the opinion of the Court of Appeals and its affirmance of the trial court. The problem arose when Plaintiffs' counsel, after the trial was over, asserted that the amended complaint and the "specific defect" theory were all "legally irrelevant" and they were entitled to a new trial. That raises the question as to whether the amendment and all the contentions of the Plaintiffs during discovery and the trial were for an "improper purpose" in violation of Rule 11.

Perhaps, the problem arises from the interpretation placed upon the words "legally irrelevant." Defendants' counsel construe the words and the contention advanced along with them as an admission by Plaintiffs' counsel that the amended complaint and the "specific defect" theory were filed and pursued for an improper purpose. There is considerable logic in this interpretation. Plaintiffs' counsel say they "merely stated a plausibly correct legal proposition: that even if the jury did not believe the evidence that defective valve stem seals were the specific cause of the Rabbit's excessive oil consumption, the jury could still have found for Plaintiffs, on a class-wide basis, as to both the Rabbits' "unfitness" and fraudulent concealment solely on the basis of statistical evidence that these Rabbits suffered a rate of excessive oil consumption several times greater than that of other manufacturers' cars."

The Court of Appeals found it "unnecessary to reach the question of whether or not Plaintiffs in a breach of implied warranty class action need prove the existence of a specific defect common to all members of the class." The Court also found it "unnecessary to determine whether the special verdict impermissibly tied plaintiffs' unfair trade practice claims to the design defect issue in their breach of warranty claims." *Deadwyler v. Volkswagen,* 884 F.2d 779, 782 (4th Cir.1989). In effect the Court of Appeals found that the Plaintiffs got what they asked for in the issues and instructions and must live with what they received, or in the words of an old mountain adage, "You made your bed, now lie in it."

It is apparent that Plaintiffs' counsel did not advance any winning claims on their appeal but the Court cannot find that their contentions are without legal foundation and were interposed for an improper purpose. It therefore follows that sanctions should not be imposed under this claim.

Plaintiffs' counsel filed a motion on November 28, 1990 for an order pursuant to Rule 11, and 28 U.S.C.A. Section 1927 imposing appropriate sanctions on Defendants and their counsel, Daniel V. Gsovski, Bynum M. Hunter, Catherine C. Eagles and William F. Womble, Jr. The basis for the motion is the signing of the Defendants' motions for sanctions dated April 8, and November 6, 1990. They seek sanctions in an amount equal at least to the fees and expenses for hundred of hours that Plaintiffs' counsel have been required to expend in refuting the contents of the Defendants' motions and briefs for sanctions, as well as a substantial additional penalty, related to the size and wealth of the Defendants and their counsel, necessary to deter the gross abuse of the sanctions remedy. They contend that the Defendants' motions were filed for an improper purpose.

As will appear from the findings and conclusions the Court has found none of the Defendants' claims for sanctions to be frivolous or without merit, although only two of such claims have been allowed. The Court cannot, and does not, find that the motions were filed for an improper purpose. The Court does find and conclude that the Plaintiffs' motion for sanctions is without merit and will deny it.

By way of summary the Court finds and concludes that the motion for sanctions as it pertains to claims 1, 2 and 5 will be denied and allowed as to claims 3 and 4. Since claims 3 and 4 relate only to Attorney Shoolman the motion will be denied as to Attorneys Brown and Moore.

IT IS THEREFORE ORDERED as follows:

1. That the motion for sanctions under claims 1, 2 and 5 be and the same is hereby denied.

2. That the motion for sanctions under claims 3 and 4 be and the same is hereby allowed. For the reasons set forth in these findings and conclusions, appropriate sanctions under 28 U.S.C.A. Section 1927 and the inherent powers of the Court shall be imposed upon Carl Shoolman, Esquire.

3. That within 20 days of the date of this order, Attorney Shoolman may file whatever information he desires concerning the type and amount of such sanctions by way of affidavits and briefs.

4. That within 10 days thereafter, Defendants' counsel may file responsive papers in the form of affidavits and/or briefs.

5. That thereafter, Attorney Shoolman may have 10 days to reply to any filings offered by Defendants' counsel.

6. That at 9:30 a.m., on the 25th day of February, 1991, in Statesville, North Carolina, the Court will hear arguments of Attorney Shoolman and counsel for the Defendants and determine the type and amount of the sanctions.

7. That Plaintiffs' counsels' motion for sanctions be and the same is hereby denied.

With respect to the amount of the sanctions, the Court assumes that the attorney fees and costs of defense in connection with this case are immense and beyond any amount the Court would order Attorney Shoolman to pay. The Court therefore suggests that counsel for the Defendants not produce the records of the attorney fees and costs incurred in the defense of this case. The Court suggests that all attorneys review carefully the holdings in the Fourth Circuit cases of *In re Kunstler*, 914 F.2d 505 and *Blue v. U.S. Army*, 914 F.2d 525 (4th Cir.1990).

This the 11th day of January, 1991.